UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE KAW NATION OF OKLAHOMA, Plaintiff, | ) | |
| v. | ) | No. 06-934L<br>Judge Frances M. Allegra |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF JASON R. BARON

I, Jason R. Baron, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I serve as the Director of Litigation in the Office of General Counsel, National Archives and Records Administration ("NARA"), with my office located at Archives II in College Park, Maryland. I have been employed in this capacity since May 2000. Previously, between 1988 and 2000, I served as Trial Attorney and Senior Counsel in the Federal Programs Branch of the Civil Division of the Department of Justice. I am also a member of the Bar of the District of Columbia (D.C. Bar No. 366663).

2. I am generally familiar with the *Kaw Nation of Oklahoma* ("Kaw Nation") lawsuit. I am specifically aware of the Document Preservation Order issued by this Court, dated October 24, 2007, requiring preservation of documents, data or tangible things that are relevant or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending lawsuit. I am filing this Declaration based on my personal knowledge of NARA's holdings, as supplemented with information obtained from NARA archivists and staff.

3. Under the Federal Records Act ("FRA"), the Archivist of the United States is responsible for the custody of all records transferred to NARA, and by statute is required to maintain adequate facilities for the housing of those records. 44 U.S.C. §§ 2108(a) & 2110. The FRA provides the authority by which records of Federal agencies that have "sufficient historical or other value to warrant their continued preservation by the United States government" are transferred into the legal custody of NARA. 44 U.S.C. 2107. NARA's archival record holdings, by operation of statute, and in accordance with regulations promulgated thereunder, *see* 36 C.F.R. Part 1200 *et seq.,* represent records *being permanently retained by the United States government.*

4. Accordingly, any and all archival records relevant to the proceedings in the *Kaw Nation* action are being so held on a permanent basis. Undersigned counsel nevertheless has alerted key staff in NARA's Office of Records Services, Washington, D.C. (covering our headquarters holdings) and NARA's Office of Regional Records Services (covering our regional holdings nationwide), that the Court's Order in *Kaw Nation* is in effect, and I have taken reasonable steps to ensure that copies of the Order are transmitted to those components of NARA known to hold Indian and tribal records including records relevant to the *Kaw Nation* litigation. NARA employees are thus on notice that a preservation Order is in effect for these archival holdings.

5. More specifically, based on the inventorying of NARA's Indian and tribal collections undertaken by NARA staff to date, I can report that a collection of open, publicly available records of the Kaw Nation may be found in NARA's regional archives in NARA's Southwest Regional offices in Fort Worth, Texas, under the general heading of "Records of the Pawnee Agency and Subagencies." Additionally, Kaw Nation records

may be found in NARA's Washington, D.C. area archival holdings, both in our Main building on the Mall in Washington, D.C., as well as at Archives II situated in College Park, Maryland. Relevant NARA holdings appear to include records catalogued under the supervising Bureau of Indian Affairs agency that had jurisdiction over a particular tribe, which in the case of the Kaw Nation would include the Potawatomi Agency, the Kansas Agency, the Osage Agency, and the Kaw Agency. NARA holds both 19th and 20th century records in various records series known by such titles as "Letters Received by the Office of Indian Affairs," and "Central Classified Files." Additionally, NARA has many additional archival series of Indian and tribal records that may contain relevant records to this litigation, including a series known under the generic name "General Services Files." Numerous finding aids exist for these various collections, and NARA staff are available to provide reasonable assistance to researchers with respect to their use of these open and publicly available collections of permanent records wherever they may reside.

6. Beyond NARA's archival holdings, I am confident that NARA does not possess any operational or active records, either in textual (i.e., hard-copy) or electronic form, that would be considered relevant or material to the underlying proceedings in the *Kaw Nation* case. The only contact NARA archivists have with respect to archival records are requests they may receive from time to time for access to such records; they do not themselves generate records of any kind that would be relevant to the matters being litigated in this case, including involving a damage action for breaches of trust duties by the United States or its components or agencies.

7. Nevertheless, in further response to this Court's Order in the present case, and

in addition to the prior notice of this Court's Order given to key staff by undersigned counsel (per ¶ 4, *supra*), NARA issued a nationwide Notice 2008-072, dated December 20, 2007, providing NARA heads of offices with notice of the Protective Order entered in the *Kaw Nation* case (see Tab A). This notice provides a link to a newly created internal NARA intra-web page (see Tab B), which in turn is to provide a link to the text of the *Kaw Nation* Order itself (the link will be operational by December 21, 2007). Notice 2008-072 was electronically disseminated to heads of offices and staff directors, with further distribution to their respective staffs expected.

8. The latest notice and intra-web page were together created to follow up on a prior comprehensive nationwide notice, NARA 2008-046, "Holds on NARA Operational Records Relevant To "Tribal Trust" Lawsuits," signed by NARA's Assistant Archivist for Information Services Martha Morphy (see Tab C), and dated December 3, 2007. NARA Notice 2008-046 was intended to alert staff to the existence of records retention orders entered in various tribal trust lawsuits. However, the NARA Notice went further with respect to observing preservation obligations, by placing all NARA staff on notice "of each person's duty to preserve relevant records and information across the board for *all* tribes currently pursuing tribal trust claims" (emphasis in original). Attached to the Notice was a list of all known tribal trust cases, *whether they currently have a retention order in place or not.* The Notice went on to state that NARA staff "must take reasonable steps to preserve every document, all data or tangible thing in its possession, custody or control" concerning five categories of information corresponding to the allegations of trust mismanagement involved in the pending tribal trust lawsuits. The Notice specifically called for NARA staff to preserve both traditional paper documents

that are relevant to the lawsuits, as well as electronic documents, including in the form of email, word processing, and voice mail, and provides specific instructions for the forwarding of electronic documents to central email and voice mail repositories for continuous preservation during the pendency of this and related lawsuits. The NARA Notice also specifically reminded employees that periodic reminders and update notices will be issued to fulfill NARA's obligations in compliance with existing court orders. Finally, the Notice stated that failure to comply with the Court's Orders may lead to the imposition of sanctions.

9. Additionally, undersigned counsel, working with NARA's records officer, has directed that NARA's technical staff responsible for the maintenance of our computer equipment and electronic communications systems act to preserve a set of disaster recovery backup tapes created contemporaneously with the Court's record retention Order. These backup tapes contain electronic mail and other documents created or received by NARA staff nationwide that were residing on our electronic systems as of September 14, 2007. They will be held indefinitely pending resolution of the proceedings in this case and at the further direction of NARA counsel and NARA's records officer.

10. With these compliance measures and with the Court's Protective Order in place, NARA's Office of the General Counsel intends to coordinate the efforts of the various NARA components to monitor compliance with the Court's Order. To this end, NARA's Records Officer will be working in tandem with an attorney in my office who has been specifically assigned to monitor the central repositories of relevant e-mail and voice mail messages, to ensure that proper archiving of such electronic records is taking place.

Both myself and the staff attorney assigned to monitor NARA's preservation actions will be expected to participate in upcoming meetings and nationwide conference calls initiated by NARA headquarters staff to remind NARA staff in both regional and headquarters components of their continuing compliance obligations. We intend to continue to participate in such meetings and conference calls on a periodic basis during the pendency of this and related lawsuits. Additionally, as has previously been done during the course of my tenure, should any issues arise involving allegations of missing or damaged records relevant to this action, NARA's Office of the General Counsel will continue to take a leading role in working with any and all appropriate components of this agency, as well as with the Department of Justice and other affected federal agencies, in an effort to resolve outstanding issues.

11. NARA does also operate federal record centers ("FRC") around the country, including Indian and tribal records of the Department of Interior ("DOI") presently consolidated at our facility in Lenexa, Kansas. Records in the Lenexa FRC remain in the legal custody of DOI, and DOI as a party defendant in the litigation controls access to such records. However, all relevant DOI records have been under a "freeze" on disposition (equivalent to a legal preservation hold) since 2004, and there are no plans to lift the freeze with respect to records identified as tribal trust records. Nevertheless, I have taken steps to alert appropriate NARA staff at the Lenexa facility of the existence of the Court's Order, and the need to preserve all records relevant to this litigation.

12. As stated above, all appropriate components of NARA holding records in their legal custody related to the Kaw Nation have been alerted to the Court's Order. NARA will continue to take reasonable steps to monitor compliance with the Court's orders,

including issuing periodic reminders of NARA's record retention obligations, until such time as the present litigation is resolved. I will also ensure that NARA's Office of General Counsel will continue to monitor NARA's obligations under the Court's Order into the foreseeable future.

13. Finally, NARA's Office of the General Counsel will immediately notify the Department of Justice should there be any violation of the Court's Orders by a NARA employee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JASON R. BARON

Executed on this 20th day of December 2007