IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAW NATION OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-cv-00934 L |
| | ) | Judge Francis M. Allegra |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO THE KAW NATION'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY DOCUMENT PRESERVATION ORDER**

Dated: January 18, 2008

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

TERRY M. PETRIE
United States Department of Justice
Environment & Natural Resources Division
1961 Stout Street, 8th Floor
Denver, CO 80294

Attorney of Record for Defendant

OF COUNSEL:

ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663

SHANI N. WALKER
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

## TABLE OF CONTENTS

I. NAVAJO NATION ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. KAW NATION DPO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. DEFENDANT'S PROPOSED MODIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED MODIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**DEFENDANT'S REPLY TO THE KAW NATION'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY DOCUMENT PRESERVATION ORDER**[1/]

Regarding the dispute over the Document Preservation Order (DPO)[2/] issued by the Court on October 24, 2007, the parties agree that the DPO was based upon an order that this Court previously entered in Navajo Nation v. United States, No. 06-cv-00945 L. See Motion to Modify Document Preservation Order at 1; Kaw Nation Response at ¶3; Record Review Site Motion at ¶2. The parties agree on little else. The dispute boils down to the question of where the Kaw Nation will inspect documents. The Kaw Nation believes the United States should move all documents – no matter where located or how unduly burdensome the task – to Pawnee, Oklahoma. The United States believes the Court should exercise the approach used in the Navajo Nation Order. Defendant's Exhibit ("Exh.") 1, Navajo Nation Order filed September 10, 2007. Mindful that the ultimate discretion here lies with the Court, Defendant notes that Kaw Nation, too, advocates and prefers the version set forth in the Navajo Nation Order. See Kaw Nation Response at paragraphs 7 and 10b.

Defendant established in its opening brief that the DPO contains provisions that appear to

---

[1/] Defendant's Reply also addresses the "Kaw Nation's Motion to Change Record Review Site to Pawnee Agency Office (BIA)." ("Record Review Site Motion") Docket (Dkt.) #24. See also Dkt. #28 ("Defendant's Unopposed Motion for Enlargement of Time" to respond to Plaintiff's Record Review Site Motion, granted January 11, 2008). The seriatim briefing related here to the Court's Document Preservation Order (Dkt. #22) include "Defendant's Opposed Motion and Supporting Memorandum to Modify Document Preservation Order" (Motion to Modify DPO) (Dkt. #23); the Kaw Nation's Record Review Site Motion (Dkt. #24); and the "Kaw Nation's Response to Defendant's Motion to Modify Document Preservation Order" ("Kaw Nation Response") (Dkt. #27).

[2/] Defendant used the acronym "RRO" (for Record Retention Order) in referring to the document preservation order in its opening Motion to Modify Document Preservation Order. Plaintiff has used the acronym "DPO" in its filings. For the purpose of uniformity and ease of the Court, we too will use the "DPO" acronym in this Reply.

have been inadvertently left unchanged from the Navajo Nation Order, as well as other provisions that warrant modification in order to reconcile the overall language and intent of the DPO. The Court should grant these proposed changes because they conform the DPO to the approach used by the Court in Navajo Nation and thereby avoid the unwarranted undue burden imposed upon Defendant under the present terms of the DPO in this case.

## I. NAVAJO NATION ORDER

The Navajo Nation Order employed a calibrated approach in providing for the Navajo plaintiff's ability to inspect documents. Two features particularly stand out because they provide insight into what the Court intended in the Navajo Nation Order. In turn, because the DPO is based upon the Navajo Nation Order, these features afford insight and serve as a blueprint for resolving the dispute before this Court.

First, unlike the Kaw Nation DPO, the Navajo Nation Order recognized and distinguished between two tiers of locations and agencies in prescribing procedures for making documents available for the Navajo plaintiff's inspection. Defendant's Exh. 1 at paragraphs 2(a) and 2(f). Paragraph 2(a) dealt with Bureau of Indian Affairs ("BIA") offices located in New Mexico and paragraph 2(f) dealt with "offices other than those identified in paragraph 2(a)." Id. (emphasis added). The Court directed the government move some of the documents maintained at BIA offices in the geographic vicinity of the Navajo Nation plaintiff to a single site fairly close at hand. Id. at paragraph 2(a) ("Gallup BIA Warehouse in Gamerco, New Mexico"). Then, the Court recognized and provided for the arrangements to be used for those documents maintained at other locations (which varied both in distance as well as the identity of other Federal agencies, including others both within and outside the Department of Interior). Id. at

paragraphs 2(f) and 2(f)(1).

Second, regardless of whether the government normally maintained Relevant Records at paragraph 2(a) or paragraph 2(f) locations, the Navajo Nation Order prescribed common procedures leading to inspection. For example, the Order addresses intermediate move plans (paragraphs 2(a) and 2(f)(iv)); review for privileged material (paragraphs 2(b) and 2(f)(ii)); provision of existing indices and inventories (paragraphs 2(b)(i) and 2(f)(ii)); designation of documents for inspection (paragraphs 2(b)(ii) and 2(f)(ii)); and plaintiff's inspection after notification from defendant (paragraphs 2(b)(iv) and 2(f)(iii)). See Defendant's Exh. 1.

These two features play a significant role in attempting to determine what the Kaw Nation DPO intended. The first feature – identifying two different categories of locations, i.e., paragraph 2(a) and paragraph 2(f) – is absent in the current version of the DPO, but the second feature providing for common procedures is present. As discussed below, this configuration leaves the DPO inconsistent with the structure of the Navajo Nation Order and imposes an undue burden on Defendant.

## II. KAW NATION DPO

As just mentioned, the Kaw Nation DPO does not identify generally two different categories of locations and offices in which documents are maintained. Instead, the DPO speaks only about the movement of records, "wherever located," to "Gamerco, New Mexico, or such other location as may be agreed upon by the parties." DPO at paragraph 2(a). Missing from the DPO is the Navajo Nation Order's provision (i.e., paragraphs 2(f) and 2(f)(1) of Defendant's Exh. 1) that identifies other offices and locations than those in the immediate geographical vicinity of plaintiff. Because it does not contain the comparable provision found in the Navajo

Nation Order, the DPO would require the government to move all documents wherever located to one venue. This result, however, is at odds with other provisions of the DPO and, furthermore, imposes an extremely onerous burden on Defendant.

First, the DPO contains redundant provisions for the handling of documents for the Kaw Nation's inspection. Logically, no need for redundancy would exist if the DPO intended for the government to move all documents to one location. Specifically, and these provisions are the same exact ones discussed above in the Navajo Nation Order, the DPO includes the following requirements twice: intermediate move plans (paragraphs 2(a) and 2(f)(iii)); review for privileged material (paragraphs 2(b) and 2(f)(i)); provision of existing indices and inventories (paragraphs 2(b)(i) and 2(f)(i)); designation of documents for inspection (paragraphs 2(b)(ii) and 2(f)(i)); and Plaintiff's inspection after notification from Defendant (paragraphs 2(b)(iv) and 2(f)(ii)). All of the cited paragraph 2(f) provisions are superfluous if the Court intended to have all documents, wherever located, moved to one location.

Second, the requirement to move all documents to one location imposes an extreme undue burden upon Defendant. We have attached detailed declarations from competent agency officials that describe the undue burden if required to comply with the terms of the DPO. See Defendant Exhs. 2 (Declaration of Rita Bratcher); 3 (Declaration of Steven D. Tilley); 4 (Declaration of Gregory Pomicter); 5 (Declaration of Bruce Maytubby); 6 (Declaration of Richard Fielitz); 7 (Declaration of Paulette Sanford); and 8 (Declaration of Julia Lagnan). In unmistakable terms, these officials from the Department of Treasury, the National Archives and Records Administration, Bureau of Indian Affairs, Office of Special Trustee, and Bureau of Land Management, describe the tremendous adverse impact upon their office's operations if

required to move their document holdings relevant to the Kaw Nation tribe from their present locations to Oklahoma. They describe the adverse impact in terms of:

* the substantial and extraordinary disruption caused to operations (Defendant Exh. 2 [Bratcher] at paragraphs 14-15; Defendant Exh. 3 (Tilley) at paragraphs 2, 10, 15, 18-19, 21; Defendant Exh. 4 [Pomicter] at paragraphs 10, 18-20, 22; Defendant Exh. 5 [Maytubby] at paragraphs 5-6; Defendant Exh. 6 [Fielitz] at paragraphs 3-4; Defendant Exh. 7 [Sanford] at paragraphs 3-4);
* the enormous difficulties in identifying the relevant documents because of how the records are presently maintained (Defendant Exh. 2 [Bratcher] at paragraphs 6-9; Defendant Exh. 3 (Tilley) at paragraphs 7-9, 11-14; Defendant Exh. 4 [Pomicter] at paragraphs 7-9, 11-12, 15; Defendant Exh. 5 [Maytubby] at paragraphs 5-6);
* the lengthy amount of time it would take to conduct such a search to identify the relevant records (Defendant Exh. 2 [Bratcher] at paragraphs 8-12; Defendant Exh. 3 (Tilley) at paragraphs 10, 15; Defendant Exh. 4 [Pomicter] at paragraphs 10, 12, 22; Defendant Exh. 5 [Maytubby] at paragraphs 5-6 [implicit given the volume of materials to search that are not recorded by the name of the Tribe]; Defendant Exh. 7 [Sanford] at paragraph 4 [exhaustive search required]); and,
* the disproportionately large expenditure of thousands of manhours and of dollar cost to locate those documents (Defendant Exh. 2 [Bratcher] at paragraphs 8-10, 12-15; Defendant Exh. 3 (Tilley) at paragraphs 10, 13-15, 21; Defendant Exh. 4 [Pomicter] at paragraphs 10, 13, 15, 22; Defendant Exh. 7 [Sanford] at

paragraph4; Defendant Exh. 8 [Langan] at paragraph 5).

Notably, and of no small import, the facility at the Pawnee Agency office – where Plaintiff wants the documents to be shipped for inspection – does not appear well suited structurally or in available space to handle the volume of documents that it would need to accommodate under the current DPO. Defendant Exh. 8 [Langan] at paragraph 5.

The extreme burden levied upon the government to comply with the DPO demonstrates the need to conform it to the structure of the Navajo Nation Order. That need is underscored by contrasting the extreme undue burden upon Defendant with no showing by the Kaw Nation of any undue burden incurred if Plaintiff conducted discovery through other procedures normally provided for in the rules (e.g., inspection of documents where maintained under Rules 33(d) and 34).

The only reasonable way to remove the redundancy in these provisions and provide meaning to the entire DPO, especially in light of the undue burden presently imposed upon Defendant, is to modify the DPO to include a provision comparable to paragraphs 2(f) and 2(f)(1) of the Navajo Nation Order.

## III. DEFENDANT'S PROPOSED MODIFICATIONS

We have proposed changes to paragraphs 2(a), 2(b)(iii), 2(e), and 2(f) of the DPO. See Motion to Modify DPO at 1, 3-6. The Kaw Nation does not apparently oppose the suggested changes to paragraphs 2(b)(iii) (changing location for inspection from warehouse in Gamerco, New Mexico, to Oklahoma) and 2(e) (specifying the correct city in which the office for the counsel for the Kaw Nation is located). Plaintiff does oppose, however, the suggested changes in paragraphs 2(a) and 2(f) of the DPO. See Kaw Nation Response at paragraph 10.

Notwithstanding Plaintiff's arguments, the combined effect of the proposed modifications for paragraphs 2(a) and 2(f) allows all provisions of the DPO to have substantive meaning, conforms the DPO to the structure of the Navajo Nation Order, and removes the undue burden presently imposed upon Defendant.

A. Paragraph 2(a)[3]

1. Presently States

> Defendant shall ~~move~~ Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior (Interior) Manual Part 303, Chapter 6, ~~wherever located, to the Gallup BIA Warehouse in Gamerco, New Mexico~~, or such other location as may be agreed upon by the parties, at which location such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days before movement of the records from their present locations to ~~Gamerco (or as otherwise agreed)~~, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

2. Proposed modification

> Defendant shall maintain Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior (Interior) Manual Part 303, Chapter 6, are presently located at the Southern Plains Regional Office (BIA), Anadarko, Oklahoma, and Pawnee Agency Office (BIA), Pawnee, Oklahoma, or such other location as may be agreed upon by the parties, at which location(s)

[3] For the proposed changes to paragraphs 2(a) and 2(f), we have used a strike-out for that portion of the current order which we propose to delete and underscored that language which we propose be used to replace or add to the current order.

> such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days before movement of the records from their present locations to such other location as may be agreed upon by the parties, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

In short, for those BIA offices located in Oklahoma, Defendant proposes that the Kaw Nation inspect the documents where they are currently maintained: at the Southern Plains Regional Office (BIA), Anadarko, Oklahoma; at the Pawnee Agency Office (BIA), Pawnee, Oklahoma; or such other location as may be agreed upon by the parties. The effect of these proposed modifications to paragraph 2(a) is generally consistent with what Plaintiff proposes. Two differences, however, exist between what the parties propose for paragraph 2(a).

One difference arises from Plaintiff's assertion that the Pawnee Agency location in Pawnee, Oklahoma, specifically is the "logical site" because it is within an hour of the Kaw Nation Headquarters. Kaw Nation Response at paragraph 3. Plaintiff fails, however, to mention that only approximately an hour's driving time separates the Southern Plains Regional Office in Anadarko from Oklahoma City, where counsel's office is located. See Defendant Exh. 9 (Mapquest Directions for driving from Oklahoma City, Oklahoma, to Anadarko, Oklahoma).[4/] Plaintiff cannot easily contend that inspecting documents maintained in the BIA office located in Anadarko, Oklahoma, constitutes an undue burden. Absent that showing, modifying the DPO to require Plaintiff to inspect documents at Pawnee and Anadarko does not unfairly burden the Kaw

[4/] A similar check indicates that it takes approximately 3hours and 20 minutes to drive the 183 miles from Kaw City, where Plaintiff's Headquarters is located, to Anadarko.

Nation.

The other difference between the parties' approaches to paragraph 2(a) lies in Defendant's proposed change of "maintain[ing]" the Relevant Records at the two respective BIA offices in Oklahoma, instead of "mov[ing]" all of them to the Pawnee, Oklahoma, location preferred by the Kaw Nation. Plaintiff charges that Defendant has "failed to show good cause" to "reduce its obligation from producing records" to merely "maintain[ing]" such records at their present locations. Kaw Nation Response at paragraph 10a. Plaintiff's objection lacks merit for two reasons.

One, both parties already would have Defendant make available for inspection in Oklahoma those documents kept at the BIA offices at Anadarko and Pawnee.[5] Thus, the effect of "maintaining" documents at these two BIA offices vice "moving" the records from the Anadarko BIA office to the Pawnee BIA office is de minimis, if that, under these circumstances.

The second reason also applies to Plaintiff's larger objection to Defendant's suggested changes about where documents are made available for inspection. That is, Plaintiff's charge that Defendant has "failed to show good cause" has no foundation in the law. Tellingly, Plaintiff cites no authority to support the argument that a party has to show "good cause" in proposing a modification to a court order such as the DPO.

Plaintiff's objections to Defendant's proposed modification to paragraph 2(a) have no merit. Instead, the crux of the parties' dispute lies with Defendant's proposed modification to paragraph 2(f) of the DPO.

---

[5] And, as just discussed, having Plaintiff inspect documents at Anadarko, as well as Pawnee, does not readily appear to impose an undue burden.

B. Paragraph 2(f)

1. Presently States

> The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order), as follows:

2. Proposed modification

> The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order) all of defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in paragraph 2(a) above, as follows:

Defendant's proposed modification addresses directly the problems of the DPO's superfluous language and alleviates the undue burden imposed upon the government. It also conforms the DPO to the structure of the Navajo Nation Order, consistent with the Kaw Nation's preference for the approach implemented by that Order. See Kaw Nation Response at paragraph 7 (the Navajo Nation Order "is sufficient and addresses the [Plaintiff's] concerns"). In sum, because the proposed modification brings harmony to the reading of the entire DPO and, no less importantly, alleviates the current undue burden otherwise imposed under the DPO, we respectfully request the Court amend the DPO as we have proposed.

## IV. PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED MODIFICATIONS

Plaintiff objects that Defendant's modifications would "materially alter the terms of the DPO such that Defendant is no longer required to provide the requisite documentation at the location named in the DPO." Kaw Nation Response at paragraph 10. Defendant does not intend

to argue about whether the proposed modifications "materially" alter the terms of the DPO. Instead, Defendant's argument is that the proposed modifications should be made for the reasons laid out in this Reply.

Plaintiff also contends that the DPO intended to impose upon Defendant the burden of providing documents "subject to the DPO." Kaw Nation Response at paragraph 10b. In other words, as Plaintiff sees it, the DPO intended to require Defendant to provide documents at one location. For the reasons we have set forth above regarding the ambiguity caused by the superfluous language as well as the undue burden levied upon the government, we disagree. Further, as Plaintiff sees it, "this was in fact the intent of the DPO as such provisions remain intact in the model Navajo Nation DPO." Id. We do not take this somewhat cryptical assertion to mean that the Navajo Nation Order intended for the government to produce all documents to one location. The very language of the Navajo Nation Order, as discussed above, refutes that interpretation. The Navajo Nation Order required only those documents identified in locations specified in paragraph 2(a) to be moved to the Gamerco warehouse. Nothing in the Navajo Nation Order required the movement of documents associated with offices/locations described in paragraphs 2(f) and 2(f)(1) to the central location identified in paragraph 2(a).

Plaintiff also accuses Defendant of making "substantive changes" to the Navajo Nation Order with the proposed modifications. Kaw Nation Response at paragraph 7. As discussed above, Defendant's proposed modifications are entirely consistent with the Navajo Nation Order. Moreover, by restoring the substance of the omitted language from paragraphs 2(f) and 2(f)(1) of the Navajo Nation Order to paragraph 2(f) of the DPO, the proposed modification actually conforms the DPO with the structure of the Navajo Nation Order.

Plaintiff makes ones additional unavailing argument, asserting that Defendant's proposed modifications "trivialize" its trust responsibilities to provide the Nation "with the requisite documentation subject to the DPO." Kaw Nation Response at paragraph 10b. This assertion is unfounded, because (1) the documents would still be made available; (2) the manner in which Defendant proposes to make the documents available falls well within the accepted rules for producing documents; (3) in its Response, the Kaw Nation has not even argued, much less demonstrated, that the proposed modifications work an undue burden upon Plaintiff; and (4) Plaintiff cites no case law to support this allegation that Defendant "trivialize[s]" its trust responsibilities by merely proposing these modifications. The United States takes seriously its trust obligations to Plaintiff.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests the Court grant Defendant's Motion to Modify the Document Preservation Order.

Dated: January 18, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

*s/ Terry M. Petrie*

TERRY M. PETRIE
United States Department of Justice
Environment & Natural Resources Division
1961 Stout Street, 8th Floor
Denver, CO 80294
Tel: (303) 844-1369
Fax: (303) 844-1350
Terry.Petrie@usdoj.gov

Attorney of Record for Defendant

OF COUNSEL:

ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0241
Fax: (202) 353-2021
Anthony.Hoang@usdoj.gov

SHANI N. WALKER
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **DEFENDANT'S REPLY TO THE KAW NATION'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY DOCUMENT PRESERVATION ORDER** was served on January 18, 2008, by Electronic Case Filing, on the following counsel:

Kennis Monte Bellmard, II
Andrews Davis, P.C.
100 North Broadway
Suite 3300
Oklahoma City, OK 73012

*Counsel for Plaintiff*

*s/ Terry M. Petrie*
TERRY M. PETRIE