# INDEX TO DECLARATIONS AND ATTACHMENTS

## A. DEPARTMENT OF INTERIOR

EXHIBIT 1: DECLARATION OF BRIAN B. MCCAULEY, March 31, 2008

EXHIBIT 2: DECLARATION OF PAULETTE L. SANFORD, April 2, 2008

EXHIBIT 3: DECLARATION OF RICHARD P. FIELITZ, JR., March 31, 2008

EXHIBIT 4: DECLARATION OF RICHARD T. CARDINALE, March 28, 2008

EXHIBIT 5: DECLARATION OF CHARLES E. BREECE, March 28, 2008

EXHIBIT 6: DECLARATION OF BRUCE W. MAYTUBBY, April 7, 2008

EXHIBIT A: Email from Deputy Regional Director for Trust Services, BIA Southern Plains Regional Office, to All Program Managers Regarding Preservation of Trust Records.

EXHIBIT 7: DECLARATION OF EDWARD KEABLE, April 3, 2008

EXHIBIT A: Memorandum to All Employees of the Solicitor's Office Regarding the Records Retention Order

## B. DEPARTMENT OF THE TREASURY MEMORANDUM

EXHIBIT 8: MEMORANDUM DATED APRIL 7, 2008 FROM TERESA DAWSON, SENIOR COUNSEL FINANCIAL MANAGEMENT SERVICE, WITH REPORT DATED APRIL 4, 2008.

ATTACHMENT A: February 12, 2008 Letters Issued by FMS to Mellon Bank and Bank America, Reminding them to Continue Preserving All Records Pertinent to Two Lockbox Accounts Used To Process IIM Deposits.

ATTACHMENT B: February 7, 2008 Letter Issued By FMS, Reminding the U.S. Secret Service to Continue Preserving, Until Further Notice, All Treasury Checks That FMS Forwards For Investigation and Related Information and Records.

ATTACHMENT C: Example of February 2008 Business Alert Message Issued By FMS to Banks, Reminding Them to Continue to Retain, Indefinitely, Records Associated With Interior's Deposits to the Treasury General Account.

ATTACHMENT D: February 11, 2008 Letter From BPD to NARA, Reminding NARA to Continue the "Freeze" on BPD Records at Federal Records Center.

ATTACHMENT E: February 21, 2008 Letter From FMS to NARA, Reminding NARA to Continue "Freeze" on FMS Records at Federal Records Center.

ATTACHMENT F: Global E-Mail Issued February 27, 2008 to All FMS Employees, Reminding All Employees To Continue Retaining Records Related to This Litigation Indefinitely And To Continue Utilizing the "Cobell Archive" Mailbox to Retain All IIM-Related E-Mail.

ATTACHMENT G: Global E-Mail Issued February 12, 2008 to All Employees, Reminding Employees to Continue Preserving IIM-Related Records Indefinitely And Sending all IIM-Related E-Mail to BPD's Dedicated Mail Box.

ATTACHMENT H: Retention Instructions to DO Employees, Posted On DO's Intranet Site, Including Steps For Sending E-Mail Documents to DO's Dedicated "Cobell" Mailbox.

**C. NATIONAL ARCHIVES RECORDS ADMINISTRATION**

EXHIBIT 9: DECLARATION OF JASON R. BARON, April 2, 2008

**D. ENVIRONMENTAL PROTECTION AGENCY**

EXHIBIT 10: DECLARATION OF BEN J. HARRISON

# EXHIBIT 1:

# DECLARATION OF

# BRIAN B. MCCAULEY

# MARCH 31, 2008

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **KAW NATION,** )<br>)<br>**Plaintiff** )<br>**v.** )<br>)<br>)<br>**UNITED STATES OF AMERICA** )<br>)<br>**Defendant** )<br>) | **Case No. 06-cv-00934-FMA**<br><br>**DECLARATION OF BRIAN B. MCCAULEY** |

I, Brian B. McCauley, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Records Officer for the Minerals Management Service ("MMS") in the Department of Interior. I have been employed in this capacity at the MMS since June 2005. I executed a declaration on December 20, 2007, which is incorporated herein by this reference.

2. Since that date, I have conducted an extensive inquiry process wh ere I have distributed a data call request to all program records officers, records specialists, liaisons and individuals responsible for coordinating eDiscovery responses-including the Bureau senior contact, requesting that potentially responsive records in the aforementioned matter be identified, located and inventoried and the responsible contact information for the custodian for those records be included in each response.

3. On or about February 2008, I received responses to my data call request from all four primary eDiscovery liaisons representing the MMS program offices: Administration & Budget, Minerals Revenue Management, Off-Shore Minerals Management and Policy & Management Improvement. To the best of my knowledge, all recipients of the data call request communicated the associated requirements of the data call request to the local division and branch chiefs in the MMS offices, who, in turn, designated responsible staff to review records holdings for potentially responsive records. Subsequently, no responsive records for Kaw Nation were located. I also received confirmation from the Minerals Revenue Management Records Officer that MMS has no responsive records for Kaw Nation in its holdings maintained at the Federal Records Centers ("FRC") in Denver, Colorado and Fort Worth, Texas.

4. In order to conclude that MMS did not possess Relevant Records for the Kaw Nation, MMS had to determine whether a distributee code existed for Kaw Nation in the Minerals Revenue Management program databases. The distributee code is associated with a lease and determines the allocation of royalties paid on the lease, and shows to which recipients the royalties were paid. No distributee code could be

found for Kaw Nation in the Minerals Revenue Management program databases. These findings allow the Bureau to conclude that there are no responsive records for Kaw Nation in the MMS holdings.

Executed this 31st day of March, 2008.

BRIAN B. MCCAULEY

# EXHIBIT 2:

# DECLARATION OF

# PAULETTE L. SANFORD

# APRIL 2, 2008

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **KAW NATION,** | ) | **Case No. 06-cv-00934-FMA** |
| | ) | |
| | ) | |
| **Plaintiff** | ) | **DECLARATION OF** |
| v. | ) | **PAULETTE L. SANFORD** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

I, Paulette L. Sanford, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Record Retention Order Compliance Coordinator for the Bureau of Land Management ("BLM"), a position I have held since October 8, 2006. I executed a declaration on January 17, 2008, in support of "Defendant's Reply to the Kaw Nation's Response to Defendant's Motion to Modify Document Preservation Order", which is incorporated herein by this reference.

2. After the December 2007 compliance filings, I was appointed the Record Retention Order Compliance Coordinator ("RRO CC") by Scott MacPherson, Deputy Director of Information Resources Management who is responsible for oversight and management of overall policy and program direction for IT initiatives. He executed a declaration on December 21, 2007 , which is incorporated herein by this reference.

3. Since that date, and consistent with that filing, the BLM has worked with the Solicitor's Office to ensure that BLM continues to comply with the Court's Document Preservation Order ("DPO") and appointed additional RRO CCs to represent the 13 State Offices and the three National Centers [National Operations Center ("NOC"), National Training Center ("NTC") and National Inter-Agency Fire Center ("NIFC")]. Additionally, BLM sent data call requests to determine which State offices held Kaw Nation documents. On or about January 4, 2008, the BLM received responses to the data call requests from every State Office (including New Mexico who has oversight over the Tulsa and Moore, Oklahoma offices) and the Centers. In response to the data call results, BLM formed a Core Team that participates in monthly teleconferences with RRO CCs to discuss compliance to this Court's DPO. This Core Team includes a RRO CC from the State Offices and the NOC.

4. On February 22, 2008, the BLM received modifications to the October 24, 2007 Document Preservation Order ("DPO") for Kaw Nation. On February 24, those modifications, along with the original DPO, was distributed to the Core Team, referenced above.

5. The BLM has initiated steps to separate all the Indian trust records and re-file those records by tribal name, instead of by subject matter, in an effort to organize the trust records for inspection purposes. The BLM has also developed a SharePoint survey to collect additional and more specific information from individuals who may possess Relevant Records (volume of records, specific location of records, etc.).

6. As indicated in Scott MacPherson's December 20, 2007 declaration, all staff members were directed to report any suspected incidents of alteration, mistreatment or destruction of Relevant Records or questions concerning records to Mr. MacPherson or myself. I would immediately report such incidents to the Solicitor's Office. As the newly appointed RRO CC, I have and will continue to direct the same from all of the BLM staff members. No suspected incidents of alteration, mistreatment or destruction of Relevant Records for the Kaw Nation have been reported to myself or Scott MacPherson, as of the date of this filing.

Executed this 2 day of April, 2008.

Paulette L. Sanford

PAULETTE L. SANFORD

# EXHIBIT 3:

# DECLARATION OF

# RICHARD P. FIELETZ, JR.

# MARCH 31, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAW NATION, Plaintiff | ) | Case No. 06-cv-00934-FMA |
| v. | ) | DECLARATION OF RICHARD P. FIELITZ, JR. |
| UNITED STATES OF AMERICA Defendant | ) | |

I, Richard P. Fielitz, Jr. pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Chief of Staff for the Office of the Special Trustee for American Indians ("OST") in the Department of Interior. I executed a declaration on December 14, 2007, which is incorporated herein by this reference.

2. Since that date, OST has identified a Records Retention Compliance Office Point of Contact, (POC) for each OST Office. On February 26, 2008, I sent each Office POC (via e-mail) a list of instructions and a copy of each Records Retention Order to date. The e-mail also provided a list of POC duties and responsibilities and included a copy of our Quarterly Reminder with instructions to post such reminder in the office. On the same date, I also sent (via e-mail) a copy of the Modifications to the Document Preservation Order for *Kaw Nation v. United States*. The subject of compliance with Records Retention Orders and the newly created duties associated with the Office POCs was discussed at the Senior Manager's meeting held on March 25, 2008.

3. Additionally, and as indicated in my December 14, 2007 declaration, OST further supports and carries out Interior's record retention policy by, among other measures, extensive records training for Interior employees that is conducted by OTR and by the policy of shipping all inactive records from various Interior facilities to the American Indian Records Repository ("AIRR"), an archival-quality facility, when the period for these records to be retained on-site has expired.

4. I also indicated in my December 14, 2007 declaration that I understood further guidance would issue from the Solicitor's Office from time to time and I would fully implement such guidance. On January 14, 2008, OST received guidance from the Solicitor's Office regarding compliance issues.

5. As the Chief of Staff for OST, I have and will continue to direct all staff members to report any questions concerning records, or any suspected incidents of alteration, mistreatment or destruction of Relevant Records to their Office POC or to me as the

RRO CC for OST. The Office POCs have been directed to report any such incidents to me, and I will immediately report all such incidents or questions regarding the Document Preservation Order to the Solicitor's Office. No suspected incidents of alteration, mistreatment or destruction of Relevant Records for the Kaw Nation have been reported to me by anyone within OST as of the date of this filing.

Executed this 31st day of March, 2008.

RICHARD P. FIELITZ, JR.

# EXHIBIT 4:

# DECLARATION OF

# RICHARD T. CARDINALE

# MARCH 28, 2008

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **KAW NATION,** Plaintiff ) | **Case No. 06-cv-00934-FMA** |
| v. ) | **DECLARATION OF RICHARD T. CARDINALE** |
| **UNITED STATES OF AMERICA** ) Defendant ) | |

I, Richard T. Cardinale, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Chief of Staff in the Office of the Assistant Secretary for Land and Minerals Management ("ASLM"), a position I have held since August 1, 2006, and I have been employed by the Office of the ASLM since that date. My duties include ensuring the smooth and efficient operation of the Office of the Assistant Secretary for Land and Minerals Management. I am also the Records Retention Order Compliance Coordinator ("RRO CC") and my responsibilities include being a liaison between the Office of the ASLM and the Office of the Solicitor, and ensuring that all employees of the Office of the ASLM are notified of their continuing obligation to preserve Indian trust documents.

2. The Office of the ASLM is aware of the Department-wide policy to preserve all Indian trust records. On or about March 12, 2007, the Office of the ASLM received a Memorandum signed by Lawrence L. Jensen, Deputy Solicitor, subject: Litigation Hold: Preservation of Information in Tribal Trust Cases, dated March 12, 2007, which was addressed to all Interior offices and bureaus. It directed those offices and bureaus to, among other things, preserve information potentially relevant to any tribal trust litigation, including, but not limited to, this case. The Memorandum identified common issues in tribal trust cases and directed the continued preservation of electronic and paper records potentially relevant to these cases.

3. The Office of the ASLM received a memorandum from Paul B. Smyth, Counselor to the Solicitor, subject: Compliance with Records Retention Orders in Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States; Navajo Nation v. United States; Round Valley Indian tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States* and *Quechan v. United States*, dated November 20, 2007. In response to this memorandum, on January 11, 2008, I distributed the "Smyth Memorandum", along with the attached Record Retention Orders to all employees within the Office, along with a reminder to all

employees of their responsibilities regarding preexisting Departmental preservation policies of records related to these cases, as well as all Indian trust records.

4. On December 6, 2007, I participated in a conference call arranged by the Solicitor's Office with all of the designated Records Retention Orders (RRO) Compliance Coordinators for Interior's offices and bureaus, as part of the process of developing additional measures to ensure Interior's compliance with all of the Court of Federal Claims RROs. As a result of this conference call, I became the Records Retention Order Compliance Coordinator for the Office of the ASLM

5. On or about January 14, 2008, I received further guidance from the Solicitor's Office in the form of written guidance which requested, among other things, that all Interior offices and bureaus inquire of the Office of the Assistant Secretary for ASLM on whether our respective employees possessed Relevant Information for the Kaw Nation, as well as the other Tribes who had Record Retention Orders entered in their respective cases.

6. On February 22, 2008, I received the modifications to the October 24, 2007 Document Preservation Order ("DPO") for Kaw Nation. On February 26, I distributed those modifications, along with the original DPO to the employee of the Office of the ASLM who holds Kaw Nation documents. Additionally, and as part of the Office's continuing efforts to comply with the DPO, I distributed a copy of the "Jensen Memo" (as mentioned earlier), as well as the additional guidance received from the Solicitor's Office to all employees of the Office of the ASLM on the same date.

7. Additionally, I have directed staff members to promptly report any suspected incidents of alteration, mistreatment or destruction of Relevant Records to me, and I will immediately report any such incidents to the Solicitor's Office. All staff members are also directed to forward any questions regarding compliance with the Court's Order to me and I will also refer those questions to the Solicitor's Office. As of the date of this filing, no such incidents of alteration, mistreatment or destruction have been reported to me. I understand that further guidance may be issued from time to time by the Solicitor's Office on these compliance matter, and I am prepared to fully implement such guidance, as well.

Executed this 25th day of March, 2008.

Richard T. Cardinale

RICHARD T. CARDINALE

# EXHIBIT 5:

# DECLARATION OF

# CHARLES E. BREECE

# MARCH 28, 2008

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KAW NATION,** Plaintiff v. **UNITED STATES OF AMERICA** Defendant | **Case No. 06-cv-00934-FMA** **DECLARATION OF CHARLES E. BREECE** |

I, Charles E. Breece, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Principal Deputy Director for the Office of Hearing and Appeals ("OHA"), a position I have held since October, 2000 and I have been employed by Office of Hearings and Appeals since March, 1998. My duties include overseeing OHA's administrative operations, including oversight of OHA's records management functions and responsibilities. The Department has directed that OHA and other bureaus/offices designate a person to serve as the Record Retention Order Compliance Coordinator ("RRO CC") with responsibility for, among other things, establishing procedures that ensure compliance with the Department's continuing records preservation/retention policies and court record preservation orders in Tribal trust cases. As OHA Principal Deputy Director, I have the authority to perform the RRO CC responsibilities, and to make declarations concerning OHA's records preservation and compliance reporting responsibilities.

2. The Office of Hearings and Appeals is aware of the Department-wide policy to preserve all Indian trust records. On or about March 15, 2007, the Office of Hearings and Appeals received a Memorandum signed by Lawrence L. Jensen, Deputy Solicitor, subject: Litigation Hold: Preservation of Information in Tribal Trust Cases, dated March 12, 2007, which was addressed to all Interior offices and bureaus ("Jensen Memo"). It directed those offices and bureaus to, among other things, preserve information potentially relevant to any tribal trust litigation, including, but not limited to, this case. The Memorandum identified common issues in tribal trust cases and directed the continued preservation of electronic and paper records potentially relevant to these cases. The contents of the Jensen Memo were discussed in staff meetings with OHA supervisors and staff upon receipt of the memo.

3. The Office of Hearings and Appeals received memorandum from Paul B. Smyth, Counselor to the Solicitor, subject: Compliance with Records Retention Orders in

Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States; Navajo Nation v. United States; Round Valley Indian tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States and Quechan v. United States*, dated November 20, 2007. In response to this memorandum, I briefed the OHA Director concerning its contents and then notified the Solicitor's Office that I would serve as the RRO CC.

4. On December 6, 2007, I participated in a conference call arranged by the Solicitor's Office with all of the designated Records Retention Orders (RRO) Compliance Coordinators for Interior's offices and bureaus, as part of the process of developing additional measures to ensure Interior's compliance with all of the Court of Federal Claims RROs. In response to that conference call, I designated Mary Thorstenson as my alternate, sent her copies of the records retention orders and other documents relevant to this project, and discussed with her the information covered in the conference call. I also discussed the Department's expectations in developing mechanisms for ensuring compliance with the record retention orders regarding the eight Tribes who all have retention orders entered in their respective cases.

5. On or about December 10, 2007 and January 17, 2008, Office of Hearings and Appeals received further guidance from the Solicitor's Office. On December 13, 2007, I sent a communication to all OHA employees reminding them of their responsibilities regarding the preservation of all Indian trust records, specifically regarding records of the 8 Tribes who presently have Document Preservation Orders entered in their case. OHA office supervisors were directed to respond by December 19, 2007 on whether they had relevant information in their files, and if so, to provide a description of the nature and volume of responsive documents. Each office was told to designate a point of contact to document the distribution of record retention orders, monitor compliance issues, and to serve as a conduit of information to and from myself or my alternate.

6. OHA has developed a draft Records Retention Compliance Action Plan which includes OHA's policies and procedures concerning periodic reporting of the existence of relevant information in OHA files; preserving information in accordance with the rec ord retention orders and Departmental guidance; transporting and handling relevant information, and training employees regarding record retention order compliance. OHA has 118 employees and one contractor on board at this time. On February 20, 2008, 47 field office employees were trained concerning the Department's policy to preserve Indian trust records, OHA's records retention policies and procedures, and OHA employees' responsibilities to comply with the Court's records retention orders. Training is scheduled for the remaining OHA employees and contractor during the month of April, 2008.

7. Additionally, OHA employees are required to direct any questions about records preservation policies and procedures to Mary Thorstenson or me. They must promptly report any suspected incidents of destruction of Relevant Records to me.

As appropriate, I will immediately report any such incidents to the Solicitor's Office and will refer any questions regarding compliance with the Court's Order there, as well. As of the date of this filing, no such incidents have been reported to me. I understand that further guidance may be issued from time to time by the Solicitor's Office on these compliance matters, and I am prepared to fully implement such guidance, as well.

Executed this 28 day of March, 2008.

Charles Breece

CHARLES BREECE

# EXHIBIT 6:

# DECLARATION OF

# BRUCE W. MAYTUBBY

# APRIL 7, 2008

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**KAW NATION,**
**Plaintiff**
**v.**
**UNITED STATES OF AMERICA**
**Defendant**

**Case No, 06-CV-00934-FMA**

**DECLARATION OF BRUCE W. MAYTUBBY**

I, Bruce W. Maytubby, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Deputy Regional Director for Trust Services for the Bureau of Indian Affairs ("BIA"), Southern Plains Regional Office ("SPRO"). I executed a declaration on December 20, 2007, which is incorporated herein by this reference.

2. Since the December 21, 2007 report was filed with the Court, and consistent with that filing, the BIA has completed the following tasks: I have counseled with newly hired staff that occupy key Trust positions within the Southern Plains Regional Office regarding the Court's October 24th Order. Copies of this Order and the other documentation (April 18, 2007, national broadcast message, March 12, 2007, memorandum from the Deputy Solicitor, and December 12, 2007, email from the BIA Records Retention Liaison) have been brought to their attention and made available for their review. Also, I have developed an electronic reminder that issues on a quarterly basis to key Trust employees. A copy of that reminder is attached (Exhibit A).

3. I also indicated in my December 20, 2007, declaration that I understood further guidance would issue from the Solicitor's Office from time to time and I would fully implement such guidance. On January 14, 2008, the BIA received guidance from the Solicitor's Office regarding compliance issues. An Opinion was issued January 28, 2008, from the Field Solicitor – Tulsa, Oklahoma, concerning the preservation of electronically stored information (ESI) in response to litigation filed in *Apache Tribe of Oklahoma, et al v. Chalepah, et al.*, CIV-08-133-W (W.D.Okla.); Discovery Obligation. In view of the findings of this opinion, I issued an email dated March 4, 2008, to key Regional Trust employees and the Superintendent of the Pawnee Agency, which included a copy of the Opinion and advised:

"While this Opinion addresses the Apache litigation, it is relevant to other similar to litigation filed by other Tribes (i.e., *Kaw Tonkawa, Ponca, etc.*) under the SPRO jurisdiction.

I am also including an email dated February 5, 2008, which contains other pertinent guidance relative to the preservation of trust records. While many of you received a copy from me directly, this will update the new employees that have not been involved in this litigation."

4. On February 21, 2008, I emailed a copy of an Order filed February 19, 2008, issued in the matter of *Kaw Nation of Oklahoma v. United States*, No. 06-934L, to key Regional Office Trust staff and advised:

"This Order modifies that issued on October 24, 2007, so it must be interpreted in that context. In summary, you should keep in mind-

- Preserve all documents containing "relevant" records related to this litigation. Inactive records at Pawnee Agency or SPRO should be made available to inspection by the Plaintiff.
- An intermediate Move Plan or Plans is required before any records can be moved.
- Any contract from the plaintiff or plaintiff's attorney should be reported to the Deputy Regional Director or Trust Services."

5. As indicated in my December 20, 2007, declaration, I have and will continue to direct all staff members to report any questions concerning records, or any suspected incidents of alteration, mistreatment or destruction of Relevant Records to their immediate supervisors. Those supervisors would report to me and I would immediately report such incidents or any questions regarding the Document Preservation Order to the Solicitor's Office. No suspected incidents of alteration, mistreatment or destruction of Relevant Records for the Kaw Nation have been reported to me as of the date of this correspondence.

Executed this 7th day of April, 2008.

BRUCE W. MAYTUBBY

# DECLARATION OF

# BRUCE W. MAYTUBBY

# EXHIBIT

# A

REGIONAL DIRECTOR

**Exhibit A**

Calendar Entry

# Appointment

☒ Notify me
☐ Mark Private ☐ Pencil In

| | |
|---|---|
| Subject | REMINDER - TRUST RECORDS GUIDANCE (Tribal Litigation) |
| When | Starts: Tue 04/01/2008 08:00 AM 1 min<br>Ends: Tue 04/01/2008 08:01 AM<br>☐ Specify a different time zone |
| Where | Location |
| Categorize | |

Description

The attached guidance (Trust Records Guidance.doc) is to remind you of the responsibility Trust employees have with respect to the handling and preservation of Trust records and to keep you advised the terms and conditions of Court Orders that have been issued for certain Tribes under our jurisdiction.

It is incumbent upon each of you, as Program Managers, to ensure you and your employees are in compliance with this guidance. As such, you are instructed to forward this email to your employees (provide paper copy if they do not have email access) and schedule records training as necessary to educate new employees as well as to refresh the knowledge of existing staff.

You should note that an email dated March 4, 2008, with the Subject heading, "Trust Records Preservation - Instructions from the Field Sol.", was issued to Key SPRO Trust personnel. The second attachment (FSOL_Records_Preservtn.pdf) is a copy of an opinion issued by the Field Solicitor that is relevant to trust records preservation in all Tribal litigation and reinforces the guidance we have issued.

If you have any questions, please contact me immediately.

Trust Records Guidance.doc FSOL_Records_Presrvtn.pdf

Recipients:

Dan Deerinwater
Terry Bruner
Karinda Eden
Leslie Borden
Peggy Sue Horse
Jerry Williams
Sharlene RoundFace
Debi Koebrick
Katherine Punley
Ann Alexander

Deputy Regional Director for Trust Services
Southern Plains Regional Office
(405) 247-1509
(405) 247-5611 [FAX]

# EXHIBIT 7:

# DECLARATION OF

# EDWARD KEABLE

# APRIL 3, 2008

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **KAW NATION,** | ) | **Case No. 06-cv-00934** |
| | ) | |
| **Plaintiff** | ) | |
| v. | ) | **DECLARATION OF EDWARD KEABLE** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

I, Edward Keable, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1. I am the Associate Solicitor-Administration for the Office of the Solicitor ("SOL"), a position I have held since January 6, 2003. I have been employed by SOL since November 9, 1997. My duties include administration of the SOL human resources, budget, facilities, contracting and information management. Included within SOL are eight regional offices, 10 field offices and the Washington office. The Washington office includes five legal divisions, the administrative division and the Immediate Office (which includes the Indian Trust Litigation Office ("ITLO").

2. I am aware of the Department of Interior's policy that requires that all Indian fiduciary trust records be preserved, and forbids their destruction in any case. On or about March 12, 2007, Lawrence L. Jensen, Deputy Solicitor, issued a memo entitled: Litigation Hold: Preservation of Information in Tribal Trust Cases, which was addressed to all Interior offices and bureaus. It reminded addressees of the preexisting duty to preserve records and more specifically then directed those offices and bureaus to, among other things, preserve information potentially relevant to any tribal trust litigation, including, but not limited to, this case. The Memorandum identified common issues in tribal trust cases and directed the continued preservation of electronic and paper records potentially relevant to these cases. ITLO distributed this memo on March 12, 2007.

3. Additionally, SOL currently has performance measures designed to hold employees accountable for records management. New employees are provided records management training within the first 30 days of their employment with SOL. The records management training includes: an overview of the federal agency and employee's statutory obligations to preserve federal records. This training also provides new employees with an extensive overview on the definition of federal record, the preservation policies and the procedures required to maintain records. I also generally interview every new employee in the Office on their first day during which I highlight the importance of records management generally and preservation

of trust records specifically. Upon departure from SOL, employees are directed to print and file all Federal records with their related records and comply with current litigation requirements. Currently, the SOL Records Officer conducts a quality review of the exiting employee's work environment.

4. On or about November 20, 2007, Paul B. Smyth, Counselor to the Solicitor, issued a memorandum entitled: Compliance with Records Retention Orders in Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States; Navajo Nation v. United States; Round Valley Indian Tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States and Quechan v. United States*. As requested by the Smyth Memorandum, on or about December 5, 2007, I was designated the Records Retention Order Compliance Coordinator "RRO CC" for SOL. Christina Bartlett, Supervisory Records Management Specialist, was designated as my alternate on the same date.

5. On December 6, 2007, a conference call was held between several attorneys in the Indian Trust Litigation Office and all of the designated RRO CCs for Interior's offices and bureaus, as part of the process of developing additional measures to ensure Interior's compliance with all of the Court of Federal Claims RROs. I directed Mrs. Bartlett to participate in this conference call for SOL, and she reported to me the details of what was discussed during the conference call, on that same date.

6. Mrs. Bartlett is also the Law Practice Support Lead for SOL and has provided to all SOL records staff under her supervision the following: 1) copies of all Record Retention Orders and 2) established procedures to comply with the Orders. On or about January 10 to present, Mrs. Bartlett has directed various D.C. based offices and legal divisions and the Regional and Field Offices to identify the existence of RRO tribal trust records by SOL records liaisons when liaisons seek approval to move records to offsite storage. Each office and division is directed to notify Mrs. Bartlett of the existence of these records, and records staff/liaisons are required to notify her, when moving Relevant Records to any offsite location is contemplated. Mrs. Bartlett conducts a quality review of all SOL records move requests prior to movement of the records to ensure compliance with applicable RRO requirements.

7. On or about December 18, 2007, I drafted and distributed an email describing the Smyth memorandum along with a reminder to SOL Associate Solicitors, Regional Solicitors and Field Solicitors of their responsibilities regarding preservation of trust records and including those related to these cases, and also asked them to determine whether their respective offices held information relating to eight Tribal trust cases with RROs, including *Kaw Nation v. United States*. These canvassing efforts produced negative responses from all but three component parts of the Office, and I reported this to ITLO. A true copy of the December 18th email is attached hereto as Exhibit A.

8. On or about January 17, 2008, I received and provided Mrs. Bartlett a copy of further guidance from ITLO that detailed an additional range of compliance measures potentially applicable to some or all DOI offices and bureaus and requested all DOI offices and bureaus to, among other things, canvas their respective offices to determine which locations possessed Kaw Nation documents.

9. Additionally, on March 20, 2008, Mrs. Bartlett issued an email communication in which she directed all SOL staff members to forward any questions about preservation policies to herself.

10. Mrs. Bartlett has also directed all SOL staff members to promptly report any suspected incidents of alteration, mistreatment or destruction of Relevant Records to myself or Mrs. Bartlett. She has been directed to forward any reports of suspected incidents to me, and I will immediately forward all reported incidents to ITLO and will refer any questions regarding compliance with the Court's Order to them as well. No such incidents of alteration, mistreatment or destruction have been reported to myself or Mrs. Bartlett as of the date of this filing. I understand that further guidance may be issued from time to time by ITLO on these compliance matters, and I am prepared to fully implement such guidance, as well.

Executed this 3rd day of April, 2008.

EDWARD KEABLE

# DECLARATION OF

# EDWARD KEABLE

# EXHIBIT

# A

EDWARD KEABLE
12/18/2007 11:10 AM

To: SOL-HQ Associate Solicitors, SOL-Regional Solicitors, SOL-Field Solicitors
cc: Christina M Bartlett/HQ/SOL/DOI@SOL, Elisabeth C Brandon/HQ/SOL/DOI@SOL, Thomas Bartman/HQ/SOL/DOI@SOL, JOHN STEIGER/SLC/SOL/DOI@SOL
Subject:

The Solicitor's Office is subject to Records Retention Orders (RRO) in litigation related to the following tribes:

Swinomish,
Navajo,
Jicarilla,
Pueblo Laguna,
Quechan,
Round Valley,
Pawnee Nation, and
Kaw Nation

Please consider and review all files in your office to determine whether they contain information relating to assets (either monetary or non-monetary, such as land or natural resources) of these 8 tribes.

Documents and information relating to these tribes are subject to the special protective measures required by the RRO. By **December 19, 2007** please notify me

1) whether your office does hold such documents or information (I need **negative response** if you do not have these documents/information);
2) the name of a person who will serve as the Records Retention Order Point of Contact to safeguard these documents if you do have such documents; and
3) a brief description of the nature and volume of the documents.

I know that this is short notice so I appreciate your prompt attention to this matter. Please let me know if you need more time.

Thanks.

ED

# EXHIBIT 8:

# APRIL 7, 2008

# MEMORANDUM FROM

# TERESA DAWSON WITH

# APRIL 4, 2008 LETTER

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

April 7, 2008

**MEMORANDUM FOR:** TERRY PETRIE
TRIAL ATTORNEY
ENVIRONMENT & NATURAL RESOURCES DIVISION
U.S. DEPARTMENT OF JUSTICE

**FROM:** TERESA E. DAWSON
SENIOR COUNSEL
FINANCIAL MANAGEMENT SERVICE
DEPARTMENT OF THE TREASURY

**SUBJECT:** *KAW NATION V. UNITED STATES*, No. 06-0934 (CFC)

Included with this cover memorandum is a report on actions taken by the Department of the Treasury to ensure documents subject to the October 24, 2007 Document Preservation Order in the above-referenced case continue to be retained. This report has been prepared in response to your request for an update.

The Report includes information concerning the Financial Management Service, the Bureau of the Public Debt, and certain Departmental Offices. The report was prepared based on information provided by a number of program officers from the above-described organizations.

The Department of the Treasury stands ready to respond to any questions or concerns the Court may have after reviewing the Report.

**REPORT ON ACTIONS TAKEN BY THE DEPARTMENT OF THE TREASURY TO ENSURE RETENTION OF DOCUMENTS SUBJECT TO THE DOCUMENT PRESERVATION ORDER**

*Kaw Nation v. United States*, No. 06-0934 (CFC)
April 4, 2008

This report responds to a request by the Department of Justice for an update concerning the actions taken by the Department of the Treasury ('Treasury") to ensure documents subject to the Document Preservation Order in *Kaw Nation v. United States*, No. 06-0934 (CFC), continue to be retained. This update covers activities that have occurred since Defendant's December 26, 2007 filing advising the Court, *inter alia*, of Treasury's plan for compliance with the Order.

Treasury continues to preserve documents subject to the Court's October 24, 2007 Document Preservation Order. Since Treasury's compliance plan was filed, Treasury again issued reminders to ensure the retention of required documents. The reminders Treasury issued include letters reminding banks (see Attachments A and C), the National Archives and Records Administration (NARA) (see Attachments D and E), Secret Service (see Attachment B), and employees of the Financial Management Service (FMS) and Bureau of the Public Debt (BPD) (see Attachments F and G) to continue preserving records related to this litigation. Retention instructions to pertinent Departmental Office (DO) employees continue to be posted on DO's intranet site (see Attachment H).

During the time period of December 26, 2007 to April 4, 2008, the Chief Counsel's Offices of FMS and BPD have received no reports of the loss or destruction of documents subject to the Order, nor has Treasury's Office of General Counsel.

# DEPARTMENT OF THE TREASURY

# ATTACHMENT A

# TO APRIL 4, 2008

# REPORT

**Attachment A**
**(1 of 2)**

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

February 12, 2008

Mr. David H. Dunlap, Vice President
Mellon Bank
Mellon Client Service Center
500 Ross Street; Suite 154-1360
Pittsburgh, PA 15262-0001

Re: Minerals Management Service Lockbox Account
Agency Location Code 14170001, Lockbox Number 911-4258

Dear Mr. Dunlap:

As you know, FMS remains under continuing court orders in Cobell, et al. v. Norton, et al. and various cases brought by Indian tribes to preserve, indefinitely, all records relating to Individual Indian Money (IIM) and tribal trust funds and assets. Accordingly, please continue to retain all documentation pertaining to the above-referenced lockbox account until further notice. You have confirmed that the records for this account include:

Standard Form 215
Standard Form 5515
ACH Receiving Remittance/Payment Report
Demand Deposit Account Activity Statements
any forms used to facilitate internal processing, such as the CA$H-LINK II Deposit Report Form

You must retain the records for this account IN ALL FORMS AND MEDIA generated for the account. This includes paper, electronic, microfilm, microfiche, or any other media. If you create the same record in multiple media, you must retain the record in all media.

Please distribute this letter to appropriate bank personnel, including records management personnel. If you have any questions regarding these retention instructions, please contact me at (202) 874-6847. Thank you for your continued cooperation.

Sincerely,

Michael Mackay
Director
General Revenue Collection Division

**Attachment A**
**(2 of 2)**

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

February 12, 2008

Mr. Stephen C. Herndon, Senior Vice President
Bank of America
Federal Government Banking Division
600 Peachtree Street, NE
Atlanta, GA 30308-2214

Re: Bureau of Indian Affairs –Palm Springs Lockbox Account (closed 11/1/05)
Agency Location Code 00004844, Lockbox Number 72758

Dear Mr. Herndon:

As you know, FMS remains under continuing court orders in Cobell, et al. v. Norton, et al. and various cases brought by Indian tribes to preserve, indefinitely, all records relating to Individual Indian Money (IIM) and tribal trust funds and trust assets. Notwithstanding the fact that the above-referenced lockbox account was closed effective November 1, 2005, please continue to retain all documentation pertaining to the account until further notice. You have confirmed that the account records include:

Standard Form 215
Standard Form 5515
Check copies
Monthly Account Activity Reports (MAAR)
Monthly Account Activity Statements (MAAS)
Standard Listing
Any forms used to facilitate internal processing, such as the Daily Balance Sheet

Your bank must continue to retain the records for this account IN ALL FORMS AND MEDIA that were generated. Accordingly, notwithstanding that your bank began generating photocopies of the checks associated with this account on October 1, 2001, you must continue retaining any duplicate copies on microfilm, unless and until FMS obtains court approval for your bank to retain only pre-October 2001 microfilm copies and post-September 2001 photocopies.

Please distribute this letter to appropriate bank personnel, including records management personnel. If you have any questions regarding these retention instructions, please contact me at (202) 874-6847.

Thank you for your continued cooperation.

Sincerely,

Michael Mackay

Michael Mackay, Director
General Revenue Collection Division

cc: Linda S. Corbett, Senior Vice President, Bank of America

# DEPARTMENT OF THE TREASURY

# ATTACHMENT B

# TO APRIL 4, 2008

# REPORT

**Attachment B**

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
HYATTSVILLE, MD 20782

FEB -7 2008

Mr. Michael Stenger
Assistant Director,
Office of Investigations
U.S. Secret Service
950 H Street, N.W.
Washington, D.C. 20223

Re: Document Retention Requirements

Dear Mr. Stenger:

This letter is to serve as a reminder that Treasury remains subject to continuing court orders in Cobell, et al. v. Norton, et al. and various cases brought by Indian tribes to retain, indefinitely, "every document, [datum/data] or tangible thing . . . containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation." Copies of these orders and Treasury's stipulation in the Cobell case were provided with previous letters to the Secret Service. Please let me know if you need additional copies of these documents.

As stated in previous reminder letters to the Secret Service, among the types of records that Treasury must preserve to comply with these court orders are all Treasury checks and check-related records. Accordingly, please continue to preserve, until further notice, all Treasury checks that FMS forwards to your bureau for investigation and all information and records your bureau maintains relating to those checks. Please continue to take all steps necessary to determine and document that all such records in the possession of Secret Service are being preserved indefinitely.

If you have any questions concerning these court retention orders, please contact Terri Dawson in the FMS Chief Counsel's office at (202) 874-6877, or me, at (202) 874-7913.

Thank you for your continued cooperation and assistance.

Sincerely,

Ronald G. Cymbor, Director
Check Resolution Division

cc: Thomas Dougherty, Office of Chief Council, U.S. Secret Service – Fax# 202-406-6544

# DEPARTMENT OF THE TREASURY

# ATTACHMENT C

# TO APRIL 4, 2008

# REPORT

**Attachment C**
**(1 of 2)**

**[Business Alert Message (BAM) for Current TGAs]**

This is a reminder to continue preserving records in accordance with FMS' prior instructions to your financial institution. As stated in prior Business Alert Messages, due to ongoing litigation your financial institution must retain, until further notice:

> Standard Form 215, Standard Form 5515 and any supporting documentation, IN ALL FORMS AND MEDIA, associated with transactions relating to the deposits received from the Department of the Interior for credit to the Treasury's General Account (TGA). This includes paper, electronic, microfilm, microfiche, or any other media.

If you have not already done so, please designate a point of contact at your financial institution to disseminate these instructions to appropriate personnel at your organization (including records management personnel). Please also ensure that an appropriate dissemination and compliance process is in place to ensure these instructions are being followed at your financial institution.

If these retention instructions create a problem for your operations, please send your concerns in writing to the Over-the-Counter Revenue Collection Division (OTCD) at 401 14th Street, S.W., Room 307C, Washington, DC 20227, as soon as possible.

If you have any questions, contact the Federal Reserve Bank of St. Louis at 1-866-771-1842 or Ava Singleton at (202) 874-9986.

**Attachment C**
**(2 of 2)**

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

February 27, 2008

Dear Sir or Madam:

This is a reminder to continue preserving records in accordance with FMS' prior instructions to your financial institution.

As stated in our initial Letter dated July 9, 1999 and each successive reminder letter, including our most recent reminder letter dated September 13, 2007, due to ongoing litigation, your financial institution must retain, until further notice:

> Standard Form 215, Standard Form 5515 and any supporting documentation, IN ALL FORMS AND MEDIA, associated with transactions relating to deposits received from the Department of the Interior for credit to the Treasury's General Account (TGA). This includes any such records formerly maintained by the financial institutions shown on the attached list, now in your possession, custody or control. This includes paper, electronic, microfilm, microfiche, or any other media.

If you have not already done so, please designate a point of contact at your financial institution to disseminate these record retention instructions to appropriate personnel at your organization, including records management personnel. Please ensure that an appropriate dissemination and compliance process is in place to ensure these instructions are being followed at your financial institution.

If these retention instructions create a problem for your operations, please send your concerns in writing to the Over-the-Counter Revenue Collection Division (OTCD) at 401 14th Street, S.W., Room 307C, Washington, DC 20227, as soon as possible.

Thank you for your continuing cooperation in this matter. If you have questions, the first point of contact is the Federal Reserve Bank of St. Louis at 1-866-771-1842. Should you have further questions, feel free to contact Ava Singleton on (202) 874-9986.

Sincerely,

Corvelli A. McDaniel, Director
Over-the-Counter Revenue Collection Division (OTCD)
A/C Federal Finance

# DEPARTMENT OF THE TREASURY

# ATTACHMENT D

# TO APRIL 4, 2008

# REPORT

**Attachment D**

DEPARTMENT OF THE TREASURY
BUREAU OF THE PUBLIC DEBT
PARKERSBURG, WV 26106-1328

February 11, 2008

National Archives and Records Administration
Life Cycle Management Division
Attention: Stephen Cooper
8601 Adelphi Road
College Park, MD 20740-6601

Re: Suspending Destruction

Dear Mr. Cooper:

As you are aware, the Bureau of the Public Debt (BPD), Department of the Treasury, has been under court order since August 1999 to preserve all documents relating to the pending litigation, Cobell v. Kempthorne, et al., which challenges the government's management of the Individual Indian Monies (IIM).

The purpose of this letter is to remind you that BPD remains under court order to preserve records indefinitely for purposes of the Cobell litigation. Therefore, we request that the Federal Records Centers continue to implement the freeze on **all** records from BPD Record Groups 53 and 82 and preserve all such records until further notice.

Thank you for your cooperation in this matter.

Sincerely,

for Brian Tallman

Judi Owens, Manager,
Graphics, Printing, and Records Branch

# DEPARTMENT OF THE TREASURY

# ATTACHMENT E

# TO APRIL 4, 2008

# REPORT

**Attachment E**

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
HYATTSVILLE, MD 20782

February 21, 2008

Thomas E. Mills
Assistant Archivist for Regional Records Services
National Archives and Records Administration
Office of Regional Records Services
8601 Adelphi Road, Suite 3600
College Park, MD 20740

Dear Mr. Mills:

The purpose of this letter is to remind you that Financial Management Service (FMS), a bureau of the U.S. Department of the Treasury, remains under court order to preserve records indefinitely for purposes of the Cobell, et al. v. Norton, et al. litigation. Therefore, we request that the Federal Records Centers continue to implement the freeze on **all** records from FMS Record Groups 39, 50 and 425 and preserve all such records until further notice.

If you have any questions, you may contact Charles Brett at (202) 874-6156. Thank you for your cooperation in this matter.

Sincerely,

Sharon M. King, Director
Administrative Programs Division

# DEPARTMENT OF THE TREASURY

# ATTACHMENT F

# TO APRIL 4, 2008

# REPORT

**Attachment F (1 of 4)**

**FMS Insider**

## Cobell and Tribal Litigation – FMS Retention Requirements

**To:** Office of the Commissioner
Debt Management Services
Federal Finance
Governmentwide Accounting
Information Resources
AC Management
Payment Management
Austin
Birmingham
Kansas City
Philadelphia
San Francisco
**Date:** 02/27/2008
**Expires in:** Never
**From:** William Higgins
**Subject:** Cobell and Tribal Litigation – FMS Retention Requirements
Date: February 27, 2008

To: All FMS Employees

From: Judy Tillman
*Commissioner*

Subject: Cobell and Tribal Litigation – FMS Retention Requirements

All FMS employees are again reminded that *FMS* remains subject to continuing court orders and Treasury directives, requiring us to retain and safeguard all documents, data and tangible things that relate to Individual Indian Money (IIM) and Tribal trust funds and assets, indefinitely.

To ensure that we remain in compliance with all court orders and directives, please continue to adhere to the following FMS requirements:

Do not destroy any documents, data or tangible things unless you received written
approval from the Chief Counsel. This rule applies to all documents, data and tangible things, whether litigation-related or not. Prepare a disposition request, following the instructions contained in the Chief Counsel's March 7, 2000 memorandum entitled "Process for Obtaining Disposition Approval" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page). The only exception to this rule is for "obvious non-record materials," as described in the attached "Quick Reference Guide."

**Attachment F (2 of 4)**

Continue copying or forwarding all Cobell-related and Tribal-related e-mail and other electronic documents to their respective dedicated mailboxes ("Cobell Archive@fms" for IIM-related e-mail/electronic documents and "Tribal Mailbox@fms" for Tribal-related e-mail/electronic documents). To insert a mailbox address on an e-mail, simply type "Cobell: or "Tribal" and press the "Enter" key. You may delete your copy of any e-mail or other electronic document sent to these mailboxes.

Promptly forward any voicemail messages that relate to ***any tribe*** to FMS' dedicated "Tribal" voicemail repository. Following are step-by-step instructions for forwarding voicemail messages to the repository:
Press "1" after (or while listening to) a new or saved message;
Then press "2" to forward with comment;
Voice a comment to include (1) the tribe's name when applicable, e.g., "Message

for Tribal mailbox-Crow tribe," (2) the identity of the caller, (3) the time and date of the message, (4) the duration of the message, and (5) the caller's extension, and press #;
Enter extension 91313, and press #;
After the prompts, press #, and then press # again to send (forward).

Do not archive (move) data from any FMS electronic production systems that contain litigation-related data, except pursuant to a written archive plan that has been approved by the Commissioner's Office. Please refer to the Deputy Commissioner's March 24, 2000 memorandum entitled "Maintenance of Data on FMS Systems" (posted on the FMS intranet on the "Cobell/Tribal Litigation" page) for more information about this requirement.

Do not attempt to give guidance on record retention matters to Federal Reserve Bank
personnel. Please refer all such questions to Terri Dawson at (202) 874-6877.

I appreciate your continued compliance with these instructions and encourage you to review the pertinent memoranda posted on the FMS intranet. To locate the memoranda, double click on the icon for Internet Explorer. This moves you to FMS' intranet. Under "News" or "Hot Topics", click on "Cobell/Tribal Litigation."

If you have questions or need assistance regarding any of these retention requirements, please do not hesitate to contact Terri Dawson at (202) 874-6877.

Thank you.

Attachment

# "A Quick Reference Guide"

**Attachment F (3 of 4)**

**REMEMBER: PRESERVE ALL INTERIOR/INDIAN-TRUST-RELATED MATERIAL!!**

## OBVIOUS NONRECORD MATERIALS

These may be destroyed without the approval of the Chief Counsel

| Categories | Examples |
|---|---|
| **1. Non-Treasury/FMS Material** | Office supply catalogs<br>vendor marketing materials<br>non-FMS publications/manuals, such as phone books, Federal Register, dictionaries, "Lotus Notes for Dummies," etc. |
| **2. Treasury/FMS Distribution/ Reference Material** | attendee's copy of handouts received at meetings, training, etc.<br>employee's copy of work-related organization charts, phone lists, Treasury Correspondence Manual, etc.<br>employee's copy of FMS publications, such as "Fiscal Scene"<br>excess stocks of FMS marketing materials, such as Direct Deposit brochures<br>notices received re: IT security, scheduling of meetings & van rides, training, "acting" managers, voting leave, etc. |
| **3. Personal Papers** | notices received re: retirements, deaths, TSP, CFC, PTI, Flex Account, etc.<br>employee's copy of T&A, payroll, personnel, etc. records (<u>except</u> travel records/receipts)<br>printouts of non-Federal Web pages that were not used for FMS business<br>non-FMS-related calendars/reminders<br>recipes, poems, cartoons, etc. |
| **4. Other** | printer banner pages and printer failure reports<br>interim drafts created but never circulated to anyone<br>duplicates of any of the examples in these four categories. |

**Attachment F (4 of 4)**

Click here for more information on Cobell Litigation

# DEPARTMENT OF THE TREASURY

# ATTACHMENT G

# TO APRIL 4, 2008

# REPORT

**Attachment G**

Nancy Fleetwood/BPD
02/12/2008 05:22 PM

To All - BPD (Business use only!)
cc
bcc
Subject Record retention

I'd like to remind all employees that BPD remains subject to a court order that governs the retention of records relating to the Individual Indian Money (IIM) trust fund and IIM trust assets. To ensure compliance with this court order, you should not destroy any documents or data pertaining to the following subjects without written approval from the Chief Counsel or his designee:

- IIM deposit fund investment records;
- IIM accounts and accounts held in trust by the Department of the Interior;
- Savings bonds held in trust form of registration by the Department of the Interior;
- Correspondence (internal and external) relating to Individual Indian Money; and
- Electronic communications, such as e-mails and Internet messages, relating to the subject above, unless those communications have been forwarded to the *Cobell* mailbox.

You should continue to copy or forward all e-mails relating to the IIM trust fund, IIM trust assets, and the *Cobell* litigation to the dedicated IIM Mailbox. To insert the mailbox address on an e-mail, simply type "IIM Mailbox" and press the "Enter" key.

The Federal Reserve Banks have also been instructed not to destroy any fiscal agency records unless they have received specific permission in writing from Treasury authorizing the destruction. Please refer any inquiries from FRB personnel regarding record retention to Jimmy Phillips at (202) 504-3683, fax number (202) 504-3630. Don't attempt to give guidance on record retention matters to any FRB employee.

I appreciate your continued compliance with these instructions and encourage you to occasionally review the pertinent memoranda and e-mails, which are posted on PD Web under the Office of the Chief Counsel's (OCC) website. Just click on the office link "OCC" and then click on "*Cobell v. Kempthorne* ," which appears in the "Litigation" section.

Thanks again for the great support you have shown in helping Public Debt comply with a very challenging court order.

Nancy

# DEPARTMENT OF THE TREASURY

# ATTACHMENT H

# TO APRIL 4, 2008

# REPORT

**Attachment H**

HQ Operations DONET
DEPARTMENTAL OFFICES INTRANET

GO

Click on an item to expand :

« **Back to DO-Portal**
- What's New
- About Treasury
- Building Services
- Computer/Technology
- Contacts/Directories
- Dining Services
- Employee Services
- Ethics/Legal
- Executive Secretariat
- Financial/Procurement
- FOIA/Privacy Act
- Forms/Directives
- Health/Safety
- HR Connect
- Human Resources
- Jobs/Training
- Library/Information
- News
- Phone Services
- Public Debt Applications
- Printing & Graphics
- Records/Info. Mgmt.
- Reports/Publications
- Security
- Special Events
- Travel/Transportation
- Treasury Web Sites

# Litigation Obligations and Directives

## Office of the General Counsel

Tom McGivern - (202) 622-2317

Below are memoranda explaining the scope of the Departmental Offices' legal obligations in pending cases to retain certain documents and records that may be needed as evidence in those cases.

- Directive From General Counsel To All Departmental Offices Employees Concerning Cobell Litigation
- Litigation-Related Document Retention and Search Obligations

**About Us**

Contacts
Page Owner

Cobell Litigation
Document Retention Search Obligations
**Homepage**

Contact Webmaster | Updated: Tuesday, August 0

# Litigation Obligations and Directives

## Office of the General Counsel

### Directive From General Counsel To All Departmental Offices Employees Concerning Cobell Litigation

By order of the Court in Cobell v. Norton, Departmental Offices employees must preserve all documents and records, whether in paper, electronic, or other form, that are relevant to any aspect of the government's responsibilities with respect to the Individual Indian money trust. Such responsibilities include, but are not limited to, management, administration, collection, disbursement, investment, and accounting of trust funds.

To comply with the various court orders to which we are subject in Cobell v. Norton, to make it easier to manage and retrieve electronic mail as needed, and to help ensure that our electronic mail will continue to operate, I am requesting that you do the following things:

**Step One: Search for Previous E-Mails You Have Sent or Received**
Search your e-mail, including "Inbox," "Drafts," "Message Log," and all "Folders" and "Archives," for anything that relates in any way to the Cobell litigation, Individual Indian Monies, or Department of Interior investments on behalf of Individual Indians. Forward any e-mails that you find on this subject (including attachments and retaining forwarding history) to "Cobell" or Cobell@do.treas.gov. In an effort to manage electronic mail, we have created this dedicated mailbox for Cobell-related and/or discussions relating to Individual Indian Money account.

**Step Two: E-Mails That You Send in the Future**
Beginning immediately, send a "cc" (not a "bcc") of all e-mails (including attachments) that you initiate, that relate in any way to the Cobell litigation, Individual Indian Monies or Department of Interior investments on behalf of Individual Indians, to "Cobell."

**Step Three: E-Mails That You Receive in the Future**
Also beginning immediately, forward all e-mails that you receive (including attachments and retaining forwarding history) that relate in any way to the Cobell litigation, Individual Indian Monies or Department of Interior investments on behalf of Individual Indians, to "Cobell," unless you can tell from the message that the e-mail has already been sent to the "Cobell."

If you have questions on this process or the retention of documents, call Thomas McGivern, Counselor to the General Counsel, at 622-2317.

If you need help in formulating e-mail searches or forwarding messages, or have questions on the "Cobell" mailbox, contact the HelpDesk at 622-1111.

Contact Webmaster | Updated: Tuesday, August 0

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

GENERAL COUNSEL

AUG 6 2007

**MEMORANDUM TO ALL DEPARTMENTAL OFFICES EMPLOYEES**

**FROM:** **ROBERT F. HOYT**

**SUBJECT:** Obligation to Retain Materials for Indian Litigation

The Department of the Treasury remains involved in numerous lawsuits filed by Native American individuals and tribes alleging that the U.S. Government owes an accounting for their trust funds or has mismanaged their trust funds and property. To ensure compliance with court retention orders and other litigation responsibilities, **Departmental Offices employees must retain all materials -- whether in paper, electronic (including e-mail or voice-mail), or tangible form -- that meet any of the criteria described below**. These criteria are broader than legally required and are designed only for Departmental Offices materials.

1. Materials that mention or relate to Individual Indian Money or Individual Indian Money accounts.

2. Materials that mention or relate to tribal funds or tribal fund accounts. For example, material relating to the depositing, investing, disbursing, or accounting of tribal funds must be retained.

3. Materials that mention or relate to any delay between the issuance of government checks and the redemption of investments in government accounts to cover those checks -- sometimes called "check float." This criterion is not limited to Indian or tribal trust funds.

Attached are instructions for retaining e-mails and voice-mails by forwarding them to dedicated mailboxes.

You are required to retain these materials until further notice from this Office. If you have questions regarding the retention of particular materials, please contact Peter Bieger, Deputy Assistant General Counsel (Banking and Finance) at (202) 622-1975. The retention orders from *Cobell v. Kempthorne* and the tribal trust lawsuits are located on Treasury's intranet at *http://home.do.treas.gov/litigations* and are incorporated herein by reference. This memorandum takes the place of earlier instructions issued in connection with the *Cobell* and tribal trust lawsuits. Thank you for your continued attention to this important matter.

Attachment: Instructions for using the dedicated Cobell and tribal mailboxes for retaining e-mails and voice mails.

## Attachment

### Instructions for using the dedicated Cobell and tribal mailboxes for retaining e-mails and voice-mails

*Cobell* materials retention procedures

To retain e-mails:

1. Send a "cc" (not a "bcc") of all e-mails (including attachments) that you initiate, that relate in any way to Individual Indian Money or Individual Indian Money accounts, to the dedicated e-mailbox at the following mailbox address: *cobell@do.treas.gov* or just *Cobell*.

2. Forward any e-mail that you receive, or have previously received and not already forwarded, (including attachments and retaining forwarding history) that relate in any way to Individual Indian Money or Individual Indian Money accounts, to the dedicated e-mailbox at the following mailbox address: *cobell@do.treas.gov* or just *Cobell*, unless you can tell from the message that the e-mail has already been sent to the dedicated e-mailbox.

Tribal trust materials retention procedures

To retain e-mails:

1. Send a "cc" (not a "bcc") of all e-mails (including attachments) that you initiate, that relate in any way to (a) tribal funds or tribal fund accounts or (b) any check float afforded to any invested government account, to the dedicated e-mailbox at the following mailbox address: *tribal@do.treas.gov* or just *tribal*. Please ensure that the tribe's name, if any, is included in the subject heading.

2. Forward any e-mail that you receive, or have previously received and not already forwarded, (including attachments and retaining forwarding history) that relate in any way to (a) tribal funds or tribal fund accounts or (b) any check float afforded to any invested government account, to the dedicated e-mailbox at the following mailbox address: *tribal@do.treas.gov* or just *tribal*, unless you can tell from the message that the e-mail has already been sent to the dedicated e-mailbox.

To retain voice-mails:

Forward all applicable voice messages that relate in any way to (a) tribal funds or tribal fund accounts or (b) any check float afforded to any invested government account, to the dedicated voice-mailbox in accordance with the following instructions:

- press 1 after (or while listening to) a new or saved message;
- press 2 to forward with comment;
- voice a comment and identify the relevant tribe, if any (e g., "Message for tribal mailbox-Jicarilla Tribe"), then press #;
- enter extension 91313, then press #;
- press #, then press # again to send (forward).

At the request of the Department of Justice, please review the header of each voice message being forwarded and, when voicing a comment include the identity of the caller, the time and date of the message, the duration of the message, and the extension of the caller.

Please note that the *Cobell* and tribal e-mailboxes have been copied on the e-mail message conveying this memorandum.

# EXHIBIT 9:

# DECLARATION OF

# JASON R. BARON

# APRIL 2, 2008

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE KAW NATION OF OKLAHOMA, Plaintiff, | ) | |
| v. | ) | No. 06-934L<br>Judge Frances M. Allegra |
| THE UNITED STATES, Defendant. | ) | |

## SECOND DECLARATION OF JASON R. BARON

I, Jason R. Baron, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I serve as the Director of Litigation in the Office of General Counsel, National Archives and Records Administration ("NARA"), with my office located at Archives II in College Park, Maryland. I have been employed in this capacity since May 2000. Previously, between 1988 and 2000, I served as Trial Attorney and Senior Counsel in the Federal Programs Branch of the Civil Division of the Department of Justice. I am also a member of the Bar of the District of Columbia (D.C. Bar No. 366663).

2. I am generally familiar with the *Kaw Nation of Oklahoma* ("Kaw Nation") lawsuit. I am specifically aware of the Document Preservation Order ("DPO") issued by this Court, dated October 24, 2007, requiring preservation of documents, data or tangible things that are relevant or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending lawsuit. I am also aware of the further modification to that Order issued on February 19, 2008. I am filing this Declaration based on my personal knowledge of NARA's holdings, as supplemented with

information obtained from NARA archivists and staff. I previously executed a Declaration in this case dated December 20, 2007, and filed with the Court.

3. Under the Federal Records Act ("FRA"), the Archivist of the United States is responsible for the custody of all records transferred to NARA, and by statute is required to maintain adequate facilities for the housing of those records. 44 U.S.C. §§ 2108(a) & 2110. The FRA provides the authority by which records of Federal agencies that have "sufficient historical or other value to warrant their continued preservation by the United States government" are transferred into the legal custody of NARA. 44 U.S.C. 2107. NARA's archival record holdings, by operation of statute, and in accordance with regulations promulgated thereunder, *see* 36 C.F.R. Part 1200 *et seq.*, represent records *being permanently retained by the United States government.* Accordingly, any and all archival records relevant to the proceedings in the *Kaw Nation* action are being so held on a permanent basis.

4. As noted in my prior Declaration, NARA issued a nationwide Notice 2008-072, dated December 20, 2007, providing notice of the Court's original DPO entered in the *Kaw Nation* case. This Notice was disseminated via email to NARA heads of offices with a link to a newly created internal NARA intra-web page providing further information on Tribal Trust Lawsuits. Staff subsequently updated the NARA intra-web site to include the Court's Amended Order of February 19, 2008.

4. Since the Court's further Order issued on February 19, 2008, NARA has undertaken additional activities to comply with the DPO, as amended, consistent with the actions I alluded to in paragraph 10 of my prior Declaration. I have tasked a line attorney in our Office to continue to work with NARA headquarters and regional

components, as well as NARA's records officer, to ensure continued preservation of all relevant Kaw Nation records, in both paper and electronic form. On March 11, 2008, I hosted a teleconference that included a large number of Regional Administrators and/or their designated representatives in NARA's Office of Regional Records Services (covering many of our regional holdings nationwide, including specifically from the Dallas/Ft Worth Regional office where Kaw Nation records are held). During this forty-minute teleconference, I reminded all participants of their continued obligation to preserve Kaw Nation records that may be relevant in the pending lawsuit. Additionally, I encouraged NARA staff to revisit NARA's existing internal notices (as set out in the attachments to my prior Declaration), regarding the duty to preserve these records. Participants in the teleconference had an opportunity to ask questions on matters related to preserving Kaw Nation and other tribal trust records.

5. Additionally, NARA Regional staff have now identified the Oklahoma Historical Society (OHS), a NARA-affiliated archives facility, as a further repository for late Nineteenth-century and early Twentieth-century Kaw Nation records. Plaintiffs received information pertaining to these records on February 27, 2008, pursuant to requirements under paragraphs 3(a) and (b) of the original DPO. NARA has provided a copy of the DPO and the applicable internal NARA Notices to OHS personnel. OHS recently confirmed, at my request, that no reports of missing or destroyed Kaw Nation documents have been received at its facility. I will continue to provide OHS with any notifications related to Kaw Nation records and this lawsuit to ensure these records are preserved in accordance with any future Orders.

6. Preservation of Kaw Nation records also remains an important priority at NARA facilities. On March 14, 2008, our Office received written confirmation from both NARA's Office of Records Services, Washington D.C. (covering our headquarters holdings), and NARA's Office of Regional Services, that no reports of missing or destroyed Kaw Nation documents have been received.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JASON R. BARON

Executed on this ~~1st~~ 2d day of April 2008.

# EXHIBIT 10:

# DECLARATION OF

# BEN J. HARRISON

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAW NATION OF OKLAHOMA, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 06-934L |
| UNITED STATES, | ) | |
| Defendant | ) | |

**DECLARATION OF BEN J. HARRISON**

I, Ben J. Harrison, pursuant to 28 U.S.C. § 1746, state:

1. I am generally familiar with the Kaw Nation lawsuit. I am specifically aware of the Order of this Court dated October 24, 2007, requiring preservation of documents, data, and tangible things that are relevant or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending lawsuit. I am filing this Declaration based on my personal knowledge of EPA's holdings, as supplemented with information obtained from EPA managers and staff. On December 17, 2007, I filed a Declaration with this Court in response to the Document Preservation Order of October 24, 2007. I hereby incorporate the contents of that Declaration by reference.

2. In response to this Court's Order, I distributed email messages to all EPA Region 6 senior managers and Office of Regional Council managers with instructions for further distribution to staff. The memorandum is intended to alert staff and managers to the existence of the records retention order entered in *Kaw Nation* (as attached to the email messages), and to the duty to retain documents imposed by that order. This message further instructed senior managers and staff to contact me should they become aware of the destruction of any materials subject to the records retention order.

3. EPA Region 6 staff are provided information regarding record retention requirements. Between December 5, 2007 and February 15, 2008, 11 advisories providing guidance were sent to all Region 6 management and staff. These general guidance materials show EPA's commitment to record retention. I believe that frequent reminders to EPA employees of the policies and law regarding record retention help prevent destruction of records.

4. At a meeting of the Region 6 Senior Managers on January 14, 2008, I reminded the senior managers of the email sent the previous month and of the need to contact me should they be informed of the destruction of any materials. As of April 2, 2008, no managers or staff at EPA have indicated to me that any documents subject to the records retention order have been destroyed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Ben J. Harrison