IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAW NATION OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-cv-00934-FMA |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | Judge Francis M. Allegra |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT REGARDING INADVERTENT MOVEMENT OF DOCUMENTS RELATED TO THE KAW NATION OF OKLAHOMA**

## I. Introduction

On July 31, 2008, the United States filed a Report on Document Preservation Order Compliance, Docket No. 41. Defendant's counsel indicated that it intended to investigate and provide information regarding the circumstances under which the Department of the Interior (Interior) moved a set of documents related to the Kaw Nation of Oklahoma to the American Indian Records Repository (the AIRR). After investigating the relevant facts, Defendant has learned that, on May 8, 2008, Interior moved approximately four to five inches of documents related to the Kaw Nation of Oklahoma. Frazier Decl. ¶ 11.

In the course of preparing documents to ship to the AIRR in Lenexa, Kansas, Ofelia Prado, a former employee of the Office of External Affairs (OEA), prepared a total of 33 boxes for shipment to the AIRR without first realizing that these boxes contained documents related to the Kaw Nation of Oklahoma. *See* Frazier Decl. ¶ 6. This Court's Document Preservation Order (Oct. 24, 2007), Docket No. 22 (the DPO) applied, but the inventories that accompanied the 33 boxes did not specify that any Kaw Nation of Oklahoma documents were included. *Id.* ¶ 6-7. The people who

approved the shipments reviewed only the inventories, so they could not have determined that those boxes contained documents related to the Kaw Nation of Oklahoma. *Id.* ¶ 7. As a result, Interior inadvertently moved Kaw Nation of Oklahoma documents to the AIRR without providing prior notice to Plaintiffs. Interior takes seriously its obligation to comply with this Court's Document Preservation Order, and as a result, has updated its procedures to prevent this situation from recurring. *Id.*

**II. The Origin of the Documents and the Procedures for Moving Them.**

Interior policy requires employees to print out their emails to ensure that Interior retains them. Frazier Decl. ¶ 4. The Office of External Affairs (OEA) in the Office of the Special Trustee for American Indians (OST) and the Office of Trust Responsibility (OTR) in OST are, as their names imply, offices within OST in the Department of the Interior. Fielitz Decl. ¶ 1. In OEA, individual employees printed their emails and stored them in their offices until another employee periodically collected them and sent them to the AIRR. Frazier Decl. ¶ 4. Ofelia Prado, a former OEA staff member and trained records management specialist, worked at the Masthead facility in Albuquerque, NM. Frazier Decl. ¶ 6. She held responsibility for gathering certain documents from the OEA employees' offices there until she resigned on May 2, 2008. *Id.*

When records are to be retired to the AIRR, the OTR Director must first approve the move. OTR will receive a move request form, a Chain of Custody form and an inventory of the file folder labels in the boxes that the person is requesting to move. An OTR staff member logs the request into an excel spreadsheet tracking system, checks the forms and the inventory to ensure they are complete, and generates a routine memorandum to approve the request. If the documents listed on the inventory of the move request relate to any of tribes for which a Court has issued a document

preservation or record retention order (DPO), that OTR staff member will generate a memorandum addressed to Office of the Solicitor (the SOL memorandum). The staff member attaches an OTR routing slip to that memorandum and then sends all documents received to an OTR Records Management Specialist (RMS). The RMS reviews the request to make sure it is complete, checks the inventory to ensure that the OTR staff member prepared the proper memorandum, and reviews the inventory to determine whether it contains any file labels describing documents relating to any tribes for which courts have issued a DPO. The specialist surnames and sends the package to Andrew Abeyta, Division Chief, Division of Records, Policy, Procedures and Training. Once Mr. Abeyta has surnamed the package, he forwards the package to Ethel Abeita, the OTR Director. Ms. Abeita reviews the Move Request form, the Chain of Custody form, the inventory, and the various memoranda in order to determine whether she will approve the move request. If she approves, she signs the Move Request Form and forwards the form and supporting attachments to administrative staff for forwarding to the office requesting to move inactive records.

In December 2007, every OEA employee certified that he or she was aware of and understood Interior's obligations under the DPO. Frazier Decl. ¶ 6. In this situation, Ms. Prado had inventoried some employees' files and put them in thirty-three boxes: one box in the first shipment and thirty-two boxes in the second shipment. *Id.* ¶¶ 5, 6. The inventories that Ms. Prado prepared did not indicate whether any documents related to any particular tribe. *See* Frazier Decl. Exs. HF3, HF4. OTR approved the schedule for the first shipment on November 29, 2007, and approved the schedule for the second shipment on April 2, 2008. The Move Request forms that Ms. Prado prepared and sent to OTR had included the inventory of the documents among the items she completed. *See id.* Sometime between April 1 and May 2, 2008, while waiting for OTR to approve

the Move Request form, Ms. Prado prepared the shipment. Frazier Decl. ¶ 6. She resigned from OST on May 2, 2008–before OTR had approved the Move Request form. Therefore, after she had prepared the 33 boxes to ship to the AIRR, the boxes remained in the Masthead facility pending OTR approving the Move Request form. *Id.* ¶ 6.

Ms. Abeita reviewed the Move Request form and the inventory. She relied upon Ms. Prado's representations on the inventories to determine whether the boxes that Ms. Prado had prepared to ship contained any documents related to any tribe for which a court had entered a document preservation order or a record retention order (DPO/RRO). Because those inventories did not indicate whether the documents included in the boxes related to any DPO/RRO, on May 8, 2008, Ms. Abeita approved the shipment. That same day, Sally Hernandez, an OEA staff member who also works in the Masthead office, shipped the 33 boxes, in two separate shipments, to the AIRR. Frazier Decl. ¶ 7.

**III. The Results**

On July 23, 2008, in pursuing activities related to this litigation, did Hernandez realize that OEA could have possibly transferred records covered by the DPO. *Id.* When she examined the inventory of the first shipment box, she told her superior, Hugh Frazier, the Acting Director for OEA, that she could not conclude that the box contained no documents covered by the DPO. *Id.* ¶¶ 1, 8. Mr. Frazier contacted OST senior management, who instructed him to ascertain whether those boxes contained any documents related to the Kaw Nation of Oklahoma. *Id.* ¶ 9. Mr. Frazier contacted AIRR staff and asked them to determine whether that box contained documents related to the Kaw Nation of Oklahoma, and AIRR staff confirmed that it contained two of those documents.

*Id.* ¶ 10. The next day, Hernandez realized that the second shipment of 32 boxes, similarly, may have contained some documents covered by the DPO. *Id.* ¶ 11.

Shortly thereafter, Mr. Frazier and a couple staff members traveled to the AIRR to review the documents in the boxes. In total, they discovered approximately four to five inches of documents relating to the Kaw Nation of Oklahoma. Mr. Frazier believes that OEA neither lost nor destroyed any documents in moving them to the AIRR. *Id.*

## IV. Remedial Actions

### A. OST Procedural Changes

On July 31, 2008, in response to this inadvertent movement of documents without providing prior notice, Rick Fielitz, Chief of Staff for the Office of the Special Trustee for American Indians, issued a memorandum instructing OST's field offices not to move any documents related to any of the tribes for which courts have issued DPO/RROs. Fielitz Decl. ¶ 6; Frazier Decl. ¶ 12; Ex. RF1. Aside from the restriction on moving documents, Mr. Fielitz has taken three other steps to prevent these future occurrences. First, he sent an email to "OST-ALL," a list serve that sends emails to every OST employee, a color poster that listed all of the tribes (including the Kaw Nation of Oklahoma), for which courts had entered DPO/RROs. The email instructed employees to display those posters in all office common areas. Fielitz Decl. ¶ 5; Ex. RF2. Second, on August 12, 2008, when he recognized that the court in the *Seminole Nation v. United States*, No. 06-935 (Fed. Cl. Dec. 29, 2008), case had entered a Document Preservation Order, he updated the poster and sent it to the Record Retention Order Points of Contacts for further distribution. Fielitz Decl. ¶ 5.

Mr. Fielitz would have considered disciplinary action against the employees responsible for this situation, but he could not do so because the persons who inadvertently-transferred the

documents to the AIRR without providing Plaintiff's counsel beforehand are no longer federal employees. In the future, OST will continue to consider disciplinary action for employees who violate the DPO. *Id.* ¶ 6.

### B. OEA Procedural Changes

OEA takes seriously its obligations and responsibilities under the Court's DPO ~~order~~, and intends not to move to the AIRR any other documents related to the Kaw Nation of Oklahoma. *See* Frazier Decl. ¶ 12. Therefore, in addition to the preventative steps has already taken, Mr. Frazier

1. sent out an email to all OEA staff members, that reminded all staff members not to move any documents without prior authorization, Ex. HF6;
2. Mr. Richard P. Fielitz, Chief of Staff of OST, sent a notice to all OST employees, Ex. HF7, that instructed all OST employees not to move records related to several tribes, which included the Kaw Nation of Oklahoma;
3. posted Mr. Fielitz's notice on file cabinets in all locations where OEA files are held,
4. reminded all staff members to double-check all boxes for documents related to the Kaw Nation of Oklahoma immediately before shipping such boxes; and
5. began producing a checklist that it will follow when it moves documents.

Mr. Frazier intends to continue to make every effort to preserve Relevant Records for the Kaw Nation of Oklahoma litigation and to comply fully with the Court's DPO. *Id.*

## IV. Conclusion

Interior recognizes and respects the requirements specified by the Court's Document Preservation Order and regrets the inadvertent movement of documents without providing prior

notice to Plaintiffs as required by the Order. Interior has taken necessary steps to avoid movements of records without prior notice.

Dated August 20, 2008

RONALD J. TENPAS
Assistant Attorney General

*/s/ Terry M. Petrie*
TERRY M. PETRIE
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (303) 844-1383
Fax: (202) 353-2021

Attorney for Defendants

OF COUNSEL:

JARED S. PETTINATO
ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0203
Tel: (202) 305-0241

SHANI N. WALKER
JOSHUA A. EDELSTEIN
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
THOMAS KEARNS
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury

Washington, D.C. 20227