# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAW NATION, OKLAHOMA, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | ) | Case No. 06-cv-00934 DECLARATION OF HUGH LESLIE FRAZIER |

I, Hugh Leslie Frazier, based upon my personal knowledge and information provided to me in my official capacity, do hereby declare and state:

1. I am the Acting Director for the Office of External Affairs (OEA) in the Office of the Special Trustee for American Indians (OST) in the Department of the Interior. I have held this position since July 8, 2008, and have worked at OST since February 2005. My usual duties include, but are not limited to: conducting Congressional affairs on behalf of OST, negotiating with tribes who have contracted or compacted OST functions pursuant to The Indian Self-Determination and Education Assistance Act, Pub. Law 93-638, 88 Stat. 2203 and handling other special projects. Currently, I manage approximately five staff members at OEA, with offices both in Albuquerque, New Mexico (Masthead), and in Washington, D.C. (Main Interior).

2. I am aware of the Department-wide policy to preserve all Indian trust records. The policy extends to the records for the Kaw Nation of Oklahoma. On or about March 12, 2007, I received a memorandum signed by Lawrence L. Jensen, Deputy Solicitor (the Jensen Memo), attached as Exhibit HF1. The subject of that memorandum read "Litigation Hold: Preservation of Information in Tribal Trust Cases," and was addressed to all Interior offices and bureaus, which includes OST. The Jensen Memo directed all offices and bureaus, among other things, to preserve information potentially relevant to any tribal trust litigation. The Jensen Memo also identified common issues in tribal trust cases and directed the offices and bureaus to continue to preserve electronic and paper records potentially relevant to these cases.

3. On or about October 29, 2007, I received a separate email memorandum (the Moore Memo), attached as Exhibit HF2, from the Office of the Solicitor (SOL) through my supervisor, Carrie Moore, who was serving as the Director of OEA at that time. Ms. Moore distributed the memo to OEA staff members; the memo informed us that the Court of Federal Claims had entered a Document Preservation Order (DPO) in the *Kaw Nation of Oklahoma v. United States* case. Upon reviewing the Order, I noted that the DPO required Interior to provide notice to Plaintiff's counsel before shipping

records related to the Kaw Nation of Oklahoma to the American Indian Records Repository (the AIRR). On a regular basis, I was reminded by OST senior management about the record retention and document preservation orders courts have entered in tribal trust cases.

4. Interior currently maintains records related to the Kaw Nation of Oklahoma in both the Masthead and Main Interior offices. Very infrequently, OEA moves inactive records to the AIRR to make room for more recent, active documents. OEA records indicate it has shipped documents to the AIRR for archiving only in April 2006, May 2006, and May 2008. Interior policy requires employees to print out their emails; OEA staff members then send those emails to the AIRR. In preparing the records (inactive) to be moved, staff members inventory their own inactive records and place them into boxes in their offices. Because OEA records consists mainly of the staff member's emails, the staff member inventories the records by separating and grouping the records in folders by date (month and year) instead of by a Tribe's name. Another staff member gathers the boxes for shipping to the AIRR. The staff member who gathers the boxes contacts the Office of Trust Records within the Office of the Special Trustee (OTR), which ships the records according to the proper chain of custody protocol.

5. OTR must approve two forms before OEA can move any documents. First, OEA sends OTR a proposed schedule of filing categorization, which OTR must approve. After receiving that approval, OEA inventories the boxes and otherwise prepares them for shipment to the AIRR. Second, OEA sends the Move Request Form, Chain of Custody and Inventory to OTR for approval. In this case, on November 29, 2007, OTR approved the schedule for a first shipment that contained only one box. On April 2, 2008, it approved the schedule for a second shipment that contained 32 boxes. OTR did not approve the Move Request forms for both shipments (total of 33 boxes) until May 8, 2008.

6. Ofelia Prado, a former OEA staff member and trained records management specialist, held responsibility for gathering and inventorying the boxes for both shipments from the OEA employees' offices. In December 2007, every OEA employee certified that he or she was aware of and understood Interior's obligations under the Court's DPO. Apparently, Ms. Prado did not review the boxes to determine whether any document among them related to the Kaw Nation of Oklahoma. Sometime between April 1, 2008 and May 2, 2008, while waiting for OTR to approve the move request forms for both shipments, Ms. Prado finalized the preparations for shipment. She resigned from OEA on May 2, 2008, before OTR had approved the Move Request forms for both shipments. Therefore, after Ms. Prado prepared the 33 boxes to ship to the AIRR, the boxes remained in the Masthead facility. The Move Request forms that Ms. Prado prepared for both shipments, attached as Exhibit HF3, included the inventory of the documents within the boxes among the items she completed.

7. On May 7, 2008, Richard P. Fielitz, OST Chief of Staff, sent an email to all OST employees stating the following:

> Both Tribal and Individual Indian records, (both active and inactive) are to be preserved and retained. This has been interpreted to include **a prohibition on moving records from one physical location to any other**.
>
> You are instructed **not to move** any Tribal or Individual Indian records (either active or inactive) **or accept** any such records without a written chain of custody form (active records) or a records move request form (inactive records) **and** approval from the Solicitor's Office which will be provided through the Director of Trust Records and/or the Chief of Staff (emphasis in original).

In response to this new directive, Jerry Chavez, then-Acting Director of OEA, sought guidance from Ethel Abeita, Director of OTR, to determine whether OEA could ship the 33 boxes to the AIRR. Ms. Abeita advised Mr. Chavez that OTR could ship the 33 boxes as long as the move request was processed through OTR (regular move procedures). On May 8, 2008, Ms. Abeita reviewed the Move Request forms; however, none of the items listed on the inventory list attached to that form specified that the documents related to the Kaw Nation of Oklahoma. Therefore, on May 8, 2008, Ms. Abeita approved the Move Request forms for both shipments, attached as Exhibits HF4 and HF5. That same day, Sally Hernandez, an OEA staff member who works in the Masthead office, shipped the 33 boxes in two separate shipments to the AIRR.

8. On July 23, 2008, related to this litigation, OEA began compiling an inventory of all trust documents that OEA maintained and that related to the Kaw Nation of Oklahoma. Ms. Hernandez told me that, in the process of producing this list, she remembered the May 8, 2008, shipments from Masthead to the AIRR. Ms. Hernandez told me she wanted to make certain that OEA had not improperly shipped any documents. She examined the list of OEA shipments to the AIRR and informed me on July 25, 2008 that the inventory listing of the contents in one box included in that shipment was very generic, and she could not conclude whether the box contained any documents related to the Kaw Nation of Oklahoma. This deeply concerned me because I did not want to have violated the Court's DPO.

9. Once I realized that this box might contain documents related to the Kaw Nation of Oklahoma, I noted this on our document production list and informed OST senior management on July 25, 2008 via email and I discussed this issue with senior OST management at a meeting held on July 28, 2008. Senior management advised me that

we needed to ascertain whether the box included any relevant records because the Court had ordered us to provide notice to the Kaw Nation of Oklahoma before we shipped those documents.

10. On July 28, 2008, I contacted AIRR staff and asked them to open the one box from the first shipment to determine whether it contained any documents related to the Kaw Nation of Oklahoma. The next day, staff members at the AIRR staff informed me that they had discovered two documents related to the Kaw Nation of Oklahoma in the box.

11. Also, on July 29, 2008, Ms. Hernandez realized that the second shipment (32 boxes) might also contain Kaw Nation of Oklahoma records. Soon after, I traveled from OEA to the AIRR in Lenexa, Kansas, on August 5, 2008, to begin searching through the remaining 32 boxes. Between August 11, 2008 and August 19, 2008, OEA staff and several OTR staff members continued searching through the 32 boxes. A total of approximately four to five inches of documents related to the Kaw Nation of Oklahoma were discovered. No documents related to the Kaw Nation of Oklahoma were damaged or lost during the move.

12. OEA takes seriously its obligations and responsibilities under the Court's DPO. To ensure it provides notice to Plaintiff's counsel before it inadvertently moves to the AIRR any other documents related to the Kaw Nation of Oklahoma, the following steps have been taken: (a) on July 31, 2008, I sent out an email to all OEA staff members, attached as Exhibit HF6, that reminded all staff members not to move any documents without prior authorization; (b) Mr. Richard P. Fielitz, Chief of Staff of OST, sent a notice to all OST employees, attached as Exhibit HF7, that instructed all OST employees not to move records related to several tribes, which included the Kaw Nation of Oklahoma; (c) Mr. Fielitz's notice was posted on file cabinets in all locations where OEA files are held and (d) I reminded all staff members to double-check all boxes for documents related to the Kaw Nation of Oklahoma immediately before shipping such boxes in the future. Additionally, OEA is producing a checklist it will follow when it plans to move documents in the future. OEA will continue to make every effort to preserve Relevant Records for the Kaw Nation of Oklahoma litigation and to comply fully with the Court's DPO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of August 2008.

Hugh Leslie Frazier

HUGH LESLIE FRAZIER